Modified.

### In re HEAP.
### Patent Appeal No. 3420.

Court of Customs and Patent Appeals.
Feb. 4, 1935.

Augustus S. Stoughton and Edw. S. W. Farnum, Jr., both of Philadelphia, Pa., for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the Examiner, rejecting all of the claims of appellant's application for want of invention over the prior art. The three claims of the application read as follows:

"1. A lead-acid storage battery negative pole plate containing finely ground peat.

"2. A lead-acid storage battery negative pole plate containing approximately one half of 1% of finely ground peat.

"3. A paste for the manufacture of lead-acid storage battery negative pole plates containing the resultant products of an admixture of peat, a solution of alkaline hydroxide, lead oxides, and sulphuric acid."

The application relates to a lead-acid storage battery, and the alleged invention consists in the addition of finely ground peat to the lead oxides used in making the paste for the active material of the negative plate.

Appellant in his specification states:

"The object of my invention is to improve the discharge characteristics of the negative plates in a storage battery. More especially, my invention consists in improving storage batteries so that they maintain a comparatively high voltage under discharge at comparatively high discharge rates and especially at low temperatures.
* * *

"It is found that the addition of finely divided peat in this manner to the active material of the negative plates not only improves their voltage characteristics at high discharge rates and low temperatures but also has a similar effect to that of the inert "expanders" which are usually introduced into the active material of the negative plate to increase porosity and prevent contraction and loss of capacity in service. Where peat is introduced into the active material, the amount of expander which would otherwise be used may be considerably reduced."

The application of appellant discloses that the peat may be added directly to the active material of the negative plate in the proportion of approximately one-half of 1 per cent., or, alternatively, the peat may be first added to a weak solution of a sodium or potassium hydroxide, and then the resulting mixture added to the active material of the negative plate, together with sulphuric acid.

There is but one reference relied upon, viz., Reinhardt, 1,817,846, August 4, 1931. This patent discloses a lead-acid storage battery negative pole plate containing an expander composed of humic substances obtained from several sources, one of which is peat. The peat is mixed with a solution of an alkaline hydroxide, which dissolves the humic substances. The alkaline solution containing the humic substances is then separated from the solid substances of the peat which are not soluble in the alkaline solution, and sulphuric acid is then added to the alkaline solution to cause precipitation of the humic substances, which substances are added to the active material of the negative pole plate in the proportion of about 0.1 per cent. to 1 per cent. by weight. The patentee states that, as an alternative method, the alkaline solution may be added directly to the active material of the negative plate, and then sulphuric acid is added to the mixture to precipitate the humic substances in the active material. The patentee states that by "humic substances" he means primarily humic acid, but they may also include in small amounts "analogous materials such as ulmic acid, apocunic acid and crenic acid," all of which, including the humic acid, may be obtained from peat.

The patent states:

"The principal object of the invention is to impart to the plates increased capacity and improved life."

The patent further states:

"With the humic substance obtained by any of the processes and applied to the paste or plates by any of the methods described above, plates of exceptionally high capacity are obtained. In fact the humic substance added to the negative plates increases the capacity of the same to such an extent that these plates can be made with less active material than the positive plates used in the same battery.

"The greatest beneficial action of this humic substance in the negative plates is exhibited when the battery is discharged at temperatures lower than ordinary, as comparative tests made with batteries having negative plates with and without the humic substance show that those having the humic substance incorporated therein have much higher capacity than those without the substance. This same beneficial action is obtained whether the batteries are discharged

at high or low temperature but it is more marked when the discharge takes place at the lower temperature. This is a very desirable feature inasmuch as the capacity of batteries is lower when discharged ·at low temperatures."

It is appellant's contention that, inasmuch as Reinhardt does not state that his invention maintains a comparatively high voltage under discharge at comparatively high discharge rates, which appellant states is one of the objects of his invention, the peat employed by him should not be considered as the equivalent of the humic substances employed by Reinhardt.

In the statement of the Examiner we find the following:

"While Reinhardt discloses the treatment of peat to obtain substantially pure humic substances, it is considered that there is no invention involved in employing impure humic substances, that is, peat which has not· been subjected to a purifying process. The applicant appears to attempt some purifying process by first mixing the peat with a solution of an alkaline hydroxide. However, this mixing step does not purify the peat since the substances which are not dissolved in the solution of the alkaline hydroxide as well as those substances which are dissolved therein are added to the active material.

"Accordingly, the resulting composition of matter claimed by the applicant is not considered patentable over the composition of matter disclosed in Reinhardt. Further, no new and unobvious results are considered accomplished by omitting the purifying steps of Reinhardt with their accompanying results."

The Board of Appeals in its decision stated:

"Applicant and Reinhardt both appear to employ humic material· in finely divided form as an expander and it would appear that any difference in the results due to the· use of the different forms of the material used by applicant and Reinhardt must be due to differences in the properties of the materials used, but it is not clear just what different properties are or why they should produce different results. Applicant alleges improvement in the discharge and voltage characteristics, while Reinhardt alleges improvement in capacity and life of the plate, but *we do not feel certain* that these alleged differences amount to any more than different statements of improved efficiencies of storage batteries. To show the difference in effects on pole plates of peat and humic acid applicant has annexed to his brief a diagram showing three curves, indicating a voltage drop of a standard plate, of a plate using peat and of a plate using humic acid. This diagram we do not understand from the brief was the result of tests on different pole plates but was furnished to illustrate applicant's argument in the brief. We .have carefully considered applicant's brief and the diagram accompanying the brief but *we do not feel convinced* that different results are obtained by using peat and humic acid in the paste from which the pole plates are made and *in absence of a convincing showing that different and unobvious results are obtained,* we feel that we must agree with the examiner that the appealed claims should not be allowed." (Italics ours.)

Attention is called to the italicized portions of the Board's decision above quoted. Appellant insists that the statements "we do not feel certain," "we do not feel convinced," indicate doubt upon the part of the board as to the applicability of the reference, and that, in accordance with the· well-established rule, such doubt should have been resolved in appellant's favor and the claims should have been allowed.

We are frank to say that we regard these expressions as unfortunate. An applicant, upon appeal to the Board from a decision of the Examiner, is entitled, as we understand it, to a positive determination as to the applicability of the references relied upon regardless of the decision of the Examiner. However, as we interpret the language of the board, it was its opinion, as it was the opinion of the Examiner, that the peat employed by appellant was the equivalent of the humic substances obtained from peat and employed·by Reinhardt. Had it so stated, and further stated that appellant had not convinced it that it was wrong in such conclusion, the question of doubt raised by appellant could not have arisen.

We are constrained to hold that, upon the record before us, the .peat employed by appellant is the equivalent of the humic substances employed by Reinhardt. Of course, the fact that appellant may have discovered a new property possessed by the humic substances employed by Reinhardt, or their equivalent, peat, employed by him, does not entitle him to the allowance of his claims. ·This is so well established that no citation of authority is required.

The Examiner in his letter rejecting the claims said:

"Claims 1, 2, and 3 are rejected as lacking patentability over Reinhardt. No new and unobvious results are considered accomplished by employing impure humic acid or, in other words, omitting the purifying steps of Reinhardt with their accompanying results."

In said letter he further said:

" * * * The examiner will admit any amendment if presented within the statutory period which will enable him to pass the case for issue, but will not admit any amendment which does not accomplish this result. Such amendments as properly accompany an appeal may of course be entered in accordance with the second paragraph of Rule 68."

Appellant apparently made no attempt to amend his specification. If the peat employed by appellant was not the equivalent of the humic substances employed by Reinhardt, neither did the appellant file in the Patent Office an affidavit showing tests of the use of peat employed by him and tests of the use of humic substances employed by Reinhardt, showing that appellant secured results with respect to high voltages that were not secured by the employment of the humic substances used by Reinhardt. We do not, of course, assert that there was any burden upon appellant to do this; he had the right to rely upon his contention that the peat employed by him was not the equivalent of the humic substances employed by Reinhardt, and point to the fact in support of such contention that Reinhardt did not disclose or claim that the use of his composition resulted in maintaining high voltages as well as increasing the capacity and efficiency of the negative plate.

We think it significant that while appellant does not segregate acids from peat, as does Reinhardt, he does suggest the use of an alkaline hydroxide, and of sulphuric acid, which are also employed by Reinhardt. This would indicate to us that the active agents in the peat employed by appellant are the humic substances employed by Reinhardt, and that the only difference between them is that appellant also uses the inert residue of peat, without securing thereby any beneficial result; or, in other words, as stated by the Examiner, appellant employs impure humic acid to obtain results similar to those obtained by the pure humic acid or humic substances employed by Reinhardt.

We are therefore of the opinion that the claims of appellant were properly rejected, and the decision of the Board of Appeals is affirmed.

Affirmed.