23 C.C.P.A.(Patents)

## In re JAMES.

### Patent Appeal No. 3620.

Court of Customs and Patent Appeals.
May 4, 1936.

Clarence P. Byrnes, of Pittsburgh, Pa. (Albert Grobstein, of Washington, D. C., of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

The application, certain claims of which are here involved, relates to "Method of Treating a Liquid Mixture Containing Oxygen Derivatives of Aliphatic Hydrocarbons, and Products Thereof." A large number of claims stand allowed, but the Board of Appeals of the United States Patent Office affirmed the decision of the Examiner rejecting claims numbered 30, 41 to 46, inclusive, 53, and 55 to 58, inclusive, and the applicant appealed to this court for review of the Board's decision.

Claims 30, 57, and 58 are article claims limited to insecticides or fungicides, used as sprays to kill insects. Claims 55 and 56, also article claims, are not so limited. All the other appealed claims are method claims.

As examples, we quote claims Nos. 30, 41, 44, 55, and 56.

"30. An insecticide or fungicide compound comprising as an essential ingredient a sulphonated partially oxidized aliphatic hydrocarbon.

"41. In the method of treating a hydrocarbon mixture containing alcohols and bodies having unsaturated bonds such as olefins, the steps consisting of sulphating the same to form alkyl sulphates, and separating the alkyl sulphates.

"44. In the method of treating a liquid mixture containing aliphatic hydrocarbons with unsaturated bonds, the step consisting of sulphating the same to produce alkyl sulphates.

"55. As a new article of manufacture, a compound containing alkyl sulphates of different molecular weights, the compound being substantially free from free acid.

"56. As a new article of manufacture, a compound containing sulphonated unhydrolyzed oxygen derivatives of aliphatic hydrocarbons of different molecular weights."

It will be noted that claim 41, supra, recites two steps, to wit, (a) the formation of alkyl sulphates and (b) separating the alkyl sulphates. The first of these steps is present in all the method claims and the second is present in claims 41, 42, 45, and 53. In claim 43 the second step is defined as "decanting the liquid layer containing the sulphates," while in claim 46 the second step is defined as "neutralizing the excess acid."

The appealed claims stand rejected upon the ground of double patenting in view of appellant's patents 1,753,516, of April 8, 1930, and 1,764,792, of June 17, 1930.

Claim 6 of appellant's patent 1,764,792 reads:

"6. An insecticide and fungicide composition containing sulphonated derivatives of aliphatic hydrocarbons containing artificially-introduced chemically-combined oxygen."

The rejection by the Examiner of appealed claims 30, 56, 57, and 58 was based solely upon the foregoing claim 6 of the patent. As to claims 30, 57, and 58, it is clear that the Board of Appeals affirmed upon the same ground, those three being specifically discussed in its decision, but as to claim 56 there is no specific discussion, and it is suggested in the brief of the Solicitor for the Patent Office, in effect, that the Board regarded it as being also rejectable, along with the rejected process claims, because of appellant's other cited patent, 1,753,516. In the briefs for appellant (a reply memorandum to the brief of the Solicitor for the Patent Office having been permitted), claims 30, 57, and 58 are separately and quite elaborately discussed, but there is no discussion therein of claim 56 except that it was included with the group claimed not to be rejectable on patent 1,753,516. The assignments of error in the appeal to this court throw no light upon this question.

With respect to appealed claims 30, 57, and 58, the issue, it seems to us, is whether the "compound" for which each calls is the same, in substance, as the "composition" called for by claim 6 of the patent. We must presume that this matter received the consideration of experts in the Patent Office, and the tribunals who there passed upon the question concurred in holding, in effect, that the products are, in substance, the same. The brief on behalf of appellant challenges this finding, but bases its challenge upon argument, saying:

"Our main argument here [as to claims 30, 57 and 58] is that this application is the first to disclose several important new discoveries on such insecticides, as follows:

"(a) That the toxic value of the oxidation product against insects is greatly enhanced by sulphonation thereof; and

"(b) That at the date of his first insecticide patent No. 1,764,792, James did not know that removal of unsaturateds would avoid burning of foliage and, of course, did not disclose it therein.

"Hence, by sulphonating for insecticides, James really kills two birds with one stone. since he destroys the deleterious unsaturateds and also enhances the toxic effect.

"These discoveries are new in this case, and are nowhere claimed in any patent."

We are unable to accept this argument as establishing that the product claimed in the application differs, in substance, from the product claimed in the patent. The patent certainly teaches "sulphonating for insecticides" and the fact that certain discoveries, relative to the toxic value and the nonburning of foliage due to such sulphonation, were made subsequent to the date of the patent, certainly may not be held to entitle the applicant to another patent upon the same product.

As to appealed claim 56, whatever may have been the view of the Board relative to its being rejectable upon patent 1,753,-516, it did not reverse the Examiner in his rejection upon claim 6 of patent 1,764,792. The Examiner's statement upon that point reads:

"Claim 56 was rejected as unpatentable over the composition covered by claim 6 of applicant's patent 1,764,972, the latter being termed a composition and the former a new article of manufacture, a mere choice of terminology."

We construe this to be a holding that the compound claimed in appealed claim 56 is, in substance, the same as that of the composition claimed in claim 6 of the patent, and nothing has been presented before us which would lead us to feel justified in holding otherwise.

If appellant really has a product here which so differs in character from the product of his patent as to entitle him to a patent upon it, that difference should have been made to appear as a fact. It cannot be deduced simply from his discovery that it will produce results of which he was not formerly aware.

Process claims 41 to 46, inclusive, and 53, together with product claim 55, are designated by appellant as the "alkyl sulphate claims." Of this group, claims 41, 43, 45, and 53 define two steps, viz., (1) the formation of alkyl sulphates by sulphating the mixtures named, and (2) separating the alkyl sulphates from the excess acid. Claim 44 defines only the step of sulphating, the step of separating not being included. Claim 46 refers to "neutralizing the excess acid," but we do not understand that this is claimed to present anything patentably different from the step

of separating. Claim 55 is for a product, seemingly resulting from the two-step process.

The second step—that of separating the excess acid from the sulphates—we understand to be nothing more than a pouring off, or otherwise getting rid of, such excess. In claim 43 it is defined as "decanting the liquid layer containing the sulphates." According to Webster's New International Dictionary, decant means "to pour off from the edge of a vessel; * * To pour off gently, as liquor, so as not to disturb the sediment or precipitate; or, to pour from one vessel into another. * * *"

As we interpret the decisions of the tribunals of the Patent Office, taken together, it was held that, while appellant's patent No. 1,753,516 does not contain the term "unsaturated bonds," found in some of the appealed claims, such "unsaturated bonds" were there present; that the process of the patent necessarily resulted in "alkyl sulphates," although the patent does not use that term; that appellant has claimed in his application only what was inherent in his patent, although here claiming it by a different name; that the step of separating the excess acid from the product adds nothing inventive to the process; and that to grant the claims now under discussion would result in double patenting.

Appellant urges, in effect, that unsaturated bond bodies were not disclosed by the patent, and, while the brief on his behalf concedes that the broad claims of the patent do cover the claims now under discussion, it is insisted that the public was not taught by the patent how to make alkyl sulphates from unsaturated bodies and separate them for industrial use, and that he is here entitled to narrow claims.

Appellant's arguments have received our careful consideration, but we are unable to escape the conclusion reached below that double patenting would result from the allowance of the claims. The mere fact that appellant may have made certain disclosures as to properties not disclosed in the patent is not of itself sufficient to support an additional patent. It seems to us that there is inherent in the patent all that appellant claims here, and that the teachings of the application involved do not embrace matter allowable over the patent. He may teach here a scientific explanation, not given in the patent, as to results obtained by the patent process, but he is not entitled to patent for such scientific explanation. In re Charles Ebert et al., 57 F.(2d) 356, 19 C.C.P.A. (Patents) 1087, 1089.

We do not understand it to be contended on behalf of appellant that the step of separating the excess acid from the sulphates, taken alone, lends patentability to the claims. It is only claimed as a step in a combination involving the forming of alkyl sulphates from what is asserted to be newly discovered "unsaturateds," and the reply memorandum on behalf of appellant, wherein is found the only discussion of this step (it not having been discussed in his original brief) says, in effect, that in order to utilize the alkyl sulphates produced from the unsaturateds, "Plainly * * * they must be separated."

We are in agreement with what evidently must have been the view of the tribunals of the Patent Office that this step does not create a patentable process combination.

The decision of the Board of Appeals is affirmed.

Affirmed.