25 C.C.P.A. (Patents)

## In re NEWTON et al.
### Patent Appeal No. 3891.

Court of Customs and Patent Appeals.
April 25, 1938.

Roy W. Johns, of Chicago, Ill., for appellants.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming a decision of the Primary Examiner rejecting claims 30 to 34, inclusive, and 37 to 56, inclusive, all of the claims of appellants' application for a patent for lack of invention over the prior art, and as failing to define invention.

The Board did not agree with the Examiner that certain claims should be allowed if they included certain limitations set forth by the Examiner in his statement. Since these claims were not amended to meet the views of the Examiner, it is not necessary to discuss the disagreement of the Board with that portion of the Examiner's statement.

Claims 31, 40, and 48 are illustrative of the subject matter involved, and read as follows:

"31. The process of improving dry shortening products in regard to capacity to mix with or cream in the other ingredients of a baker's mixture which comprises adding thereto a relatively small amount of a substance of the class consisting of glycerol mono-stearate, glycerol di-stearate, and mixtures thereof sufficient to substantially increase the creaming properties of such shortening but insufficient to substantially affect the natural consistency thereof."

"40. A dry shortening comprising a substance of the class consisting of oil, fat and mixtures of oil and fat which has been refined, hydrogenated, deodorized, and chilled having added thereto a small amount of a substance of the class consisting of mono-acid glycerides of higher fatty acids, di-acid glycerides of high fatty acids, and mixtures thereof in amounts sufficient to substantially increase the creaming properties of such shortening but insufficient to substantially affect the natural consistency thereof."

"48. A dry shortening comprising a substance of the class consisting of oil, fat and mixtures of oil and fat having added thereto, to produce a creaming shortening, approximately one to two tenths of one per cent of a substance of the class consisting of glycerol mono-stearate, glycerol di-stearate, and mixtures thereof."

The references cited are: Ellis, 1,261,911, April 9, 1918; Ellis, 1,547,571, July 28, 1925.

Procter & Gamble Company (British patent), 425,980, March 13, 1935, was discussed by the Examiner but not relied upon as a reference. This patent is admittedly not early enough to be a reference, and, since it was not referred to in the decision of the Board, it is not necessary to discuss it here.

The patent to Ellis, 1,261,911, relates to a process of hydrogenating resistant fatty material for edible purposes. The resultant product appears to be an edible fatty material which contains varying percentages of monoglyceride or diglyceride, or both. The patent discloses as follows: "The present invention contemplates the treatment of fatty acids such as oleic, linolic, linolenic acids and the like with glycerin or other esterifying material of equivalent character to form the various glycerids of such fatty acids. While, tri-glycerids may be prepared, it is more particularly the object to produce mono and di-glycerids of such fatty acids, or other acids reacting in a like manner. It is further an object to esterify fats or oils containing more or less free fatty acid to produce a less acid or substantially neutral product. Another object of the invention is to produce from stearic acid or similar saturated acids the mono, di and tri-glycerids or other ester. * * *"

In addition to the production of monoglycerides and diglycerides of the fatty acids, the patent also shows a treatment of oil with glycerine to produce monoglycerides or diglycerides, as follows: "The oil and glycerin in the desired proportion to produce the particular ester or mixture of esters desired, is heated to near the boiling point of glycerin under normal atmospheric pressure, or about 250–285° C., while a current of hydrogen gas is passed rapidly through the mixture for a period of time, until the requisite amount of the ester has been formed."

Ellis patent, 1,547,571, relates to synthetic edible fats, "especially to a fatty product obtained from glycerin and stearic acid." It shows the addition of monoglycerides and diglycerides to various vegetable and animal fats or oils in amounts varying from 10 per centum to 30 per centum, and also states that "even lesser * * * quantities" may be used. A product of the patent is stated to be excellent for cooking purposes.

It will be observed that the process and product claims herein are so closely related that they may be discussed together. While we have carefully examined each of the twenty-five claims before us, we do not

consider it necessary to deal with them separately. It appears to us that they are so unnecessarily numerous in describing a process and a product not intricate or involved, as to come within the condemnation expressed in Electrical Engineers' Equipment Co. v. Champion Switch Co., 2 Cir., 23 F.2d 600.

The question determinative of this issue is whether the Ellis patents disclose appellants' process and product.

The claims here, both for process and product, may be divided into two groups. In one group there is a numerical percentage limitation of from 0.1 to 0.2 per centum of the glycerides used. These limitations are stated by appellants to be directed to the lower limits of effectiveness. In the other group there is a quantitative limitation in terms of function, in that an amount of glycerides is added, sufficient to substantially increase the creaming properties of the shortening but insufficient to substantially affect the natural consistency of the shortening.

With respect to the group containing the numerical percentage limitation, appellants' specification does not teach that the percentages are critical, but it does teach that more than the quantity set out may be used. In Ellis patent, 1,547,571, it is stated that less than the lowest percentage named may be used. No critical amount is taught by the Ellis patent. Since appellants may use more than 0.2 per centum and Ellis less than 10 per centum of the same glycerides with the same oils or fats, we can perceive no difference in the processes, and should Ellis desire to reduce his glyceride percentage to the numerical limitation shown in this group of rejected claims, which he properly can do, we can see no difference in the product.

As to the group of claims which sets up functional limitation, the Board stated that: "These claims and the other claims referred to above attempt to avoid Ellis by stating that the natural consistency of the oil is not affected by the amount of the additional agent used. We find nowhere in applicant's specification a statement to this effect, but do find that in so far as percentages are concerned, the amount to be added is approximately .1–.2% of additional agent."

We believe this reasoning of the board to be correct.

Neither of the Ellis patents discloses the creaming properties of his edible product, but in our opinion this function is inherent. It cannot be otherwise. The refined oil or fat is not part of appellants' invention, and some of the oils set forth in Ellis patent 1,547,571 are edible and undoubtedly fitted for exactly the same use as those of applicants. The amounts of glycerides used may be the same both in the Ellis patent, 1,547,571, and in the claims. The product of the patent may be employed in cooking exactly in the same fashion and with the same results, as we view it, as the product of the appealed claims.

We have examined with care the affidavits which were filed on behalf of appellants. They show very clearly the experiments that were made in the use of appellants' product in the making of cakes, and are quite convincing as to the advantage to the art of cake baking by the use of the product with reference to its creaming properties. But we are of opinion that the properties of creaming necessarily follow the Ellis disclosures.

Even though appellants may have found a new property possessed but not even thought of by Ellis, they are not entitled to a patent. Apparently appellants have disclosed properties that were not disclosed in the references. On this state of facts we think the law has been settled in the case of In re James, 83 F.2d 313, 315, 23 C.C. P.A., Patents, 1124. In that case the court said: "The mere fact that appellant may have made certain disclosures as to properties not disclosed in the patent is not of itself sufficient to support an additional patent. It seems to us that there is inherent in the patent all that appellant claims here, and that the teachings of the application involved do not embrace matter allowable over the patent. He may teach here a scientific explanation, not given in the patent, as to results obtained by the patent process, but he is not entitled to patent for such scientific explanation."

From what has hereinbefore been said, it would seem that Ellis patent, 1,261,911, discloses the process of forming the glycerides in the fat or oil itself, and also the process of adding the glycerides to the oil or fat. Ellis patent, 1,547,571, discloses the glycerides added to the edible oils, and sets forth that less than the minimum percentage may be used. Since the products and the process are the same in both the application and the references, the decision of the Board was proper.

As we are of opinion that the claims were properly rejected as reading on the

references, it is not necessary to consider the second ground of rejection.

In accordance with what has been said herein, the decision of the Board of Appeals is affirmed.

Affirmed.