27 C.C.P.A. (Patents)

## In re KING et al.
### Patent Appeal No. 4184.

Court of Customs and Patent Appeals.
Dec. 4, 1939.

Whittemore, Hulbert & Belknap, of Detroit, Mich. (Clarence B. Zewadski, and L. Gaylord Hulbert, both of Detroit, Mich., and George A. Degnan, of Washington, D. C., of counsel), for appellant.

Howard S. Miller, of Washington, D. C., for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming a decision of the examiner rejecting claims 3, 5, 10 and 13 to 23 inclusive of an application for a patent for alleged new and useful improvements in "Composition of Matter and Process of Preparing the Same."

Both process and product claims are involved and they relate to a therapeutic agent having anti-scorbutic activity and to a method of producing and administering the same. Two method claims describing the isolating of vitamin C from lemon juice were allowed.

Claims 3, 5 and 10 are illustrative of the subject matter and read as follows:

"3. As a therapeutic product useful for its vitamin C potency, the substance hexuronic acid C, a white crystalline solid melting at 190 to 192°C. and having a vitamin C potency such that .5 to .75 mg. per day protects from scurvy guinea pigs maintained on a scorbutic diet."

"5. A product comprising an edible food having incorporated therein hexuronic acid C, a white crystalline substance melting at 190 to 192°C."

"10. The method of making food products having high concentration of vitamin C comprising incorporating in food products hexuronic acid C."

The reference relied upon is: Szent-Cyorgyi; Observations on the function of peroxidase systems and the chemistry of the adrenal cortex. Description of a new carbohydrate derivative—Biochemical Journal—1928—Pages 1387—1409.

Additional art cited was: King, G. C.—Vitamin C. Ascorbic Acid. Physiological Reviews, April 1936, Pages 238–262; Sherman and Smith; The Vitamins—Second Edition—1931—Pages 13, 14, 148–220; Zilva; The Antiscorbutic Fraction of Lemon Juice—Biochemical Journal—Volume 18—1924—Pages 632–637; Grettie and King; Journal of Biological Chemistry—Volume 84–1929—Pages 771–6; Sipple and King—Journal of the American Chemical Society—Volume 52—1930—Pages 420 to 423.

For hundreds of years it has been known that lemon juice had therapeutic properties and usefulness in the prevention and treatment of scurvy. Lemon juice was known for that reason as an anti-scorbutic. The component contained in the lemon juice having the said therapeutic property has

been called vitamin C for many years. It had never been recognized as such until, after much research, appellants did so recognize it. After appellants had isolated the substance, they determined its exact chemical and physical properties including melting point and empirical and structural formulas. Now the said vitamin may be made synthetically from certain sugars.

Appellants called the vitamin "hexuronic acid C." It is now known as vitamin C, hexuronic acid or hexuronic acid C, ascorbic acid and cevitamic acid, the formula being $C_6H_8O_6$.

After appellants had found that hexuronic acid was vitamin C it was then discovered that Szent-Gyorgyi had previously reported that a compound he had isolated from the adrenal glands of animals had for its empirical formula $C_6H_8O_6$, and it was designated by Szent-Gyorgyi as hexuronic acid. Following Szent-Gyorgyi's isolation of hexuronic acid from adrenal glands, he found that he could obtain an identical compound from orange juice or cabbage. Szent-Gyorgyi did not recognize his product as vitamin C and referred to it as a "reducing factor" (a substance or substances which can remove oxygen from or add hydrogen to other substances, or produce equivalent chemical changes). Appellants knew that hexuronic acid was vitamin C and, therefore, realized that when it was added to foods lacking the vitamin it gave the food antiscorbutic properties.

The examiner held as the two main grounds for rejecting the appealed product claims that there was no invention in separating a product from its impurities and that it is not invention to discover a new property of a substance which is old in the art.

The Board of Appeals in its general affirmance of the decision of the examiner held that the appealed claims are unpatentable over the Szent-Gyorgyi reference and did not deem it necessary to discuss the other grounds of rejection in detail.

The brief of appellants states that the only question involved here is one of law. We agree with appellant. They put the question as follows:

"Are the appellants, King and Waugh, who first isolated from lemon juice crystals of a pure chemical compound, and who first taught the public that these crystals had the antiscorbutic activity of vitamin C, entitled to a patent for this discovery in view of the fact that these crystals were afterwards found to be the same chemical compound that was described in a prior publication by Szent-Gyorgyi as a 'Reducing Factor' relating to the mechanism of biological oxidation of plant tissues, which publication, however, failed to disclose that the compound had antiscorbutic properties and did not teach the public and the many research men who were attempting to isolate vitamin C that this compound was in fact vitamin C?"

None of the involved process claims are directed to the isolation of vitamin C from lemon juice. We do not deem it necessary to discuss the claims separately for the reason that if appellants are not entitled to receive a patent for the rejected claims in view of the prior art of Szent-Gyorgyi, the decision appealed from must be affirmed.

The substance produced by Szent-Gyorgyi is identical with the substance produced by appellants. In fact it was pure vitamin C even though not so recognized by Szent-Gyorgyi. Szent-Gyorgyi produced hexuronic acid and made public his findings years before appellants' application was filed.

Appellants were not the first to discover or produce hexuronic acid in its pure form which is vitamin C. They did not discover that vitamin C is a specific for scurvy. Appellants contend it was invention to have discovered that hexuronic acid C is vitamin C. Had the substance not been known before it was isolated by appellants there would be force to the contention. All they did, however, was to produce a compound that was old in the art as is shown by the publication of Szent-Gyorgyi.

The therapeutic properties of hexuronic acid, while not recognized by Szent-Gyorgyi were unquestionably inherent therein. The substance of Szent-Gyorgyi could be employed in medicine exactly in the same fashion and with the same results as the product of the appealed claims. Therefore, there was no invention in the discovery that vitamin C is hexuronic acid. As we stated in In re Newton, 96 F.2d 291, 293, 25 C.C.P.A.,Patents, 1106:

"Even though appellants may have found a new property possessed but not even thought of by Ellis, they are not entitled to a patent. Apparently appellants have disclosed properties that were not disclos-

ed in the references. On this state of facts we think the law has been settled in the case of In re James, 83 F.2d 313, 315, 23 C.C.P.A.,Patents, 1124."

Appellants also contend that they have discovered a new use of an old substance as illustrated in claim 5 and because of an alleged new use are entitled to have such claims allowed.

Several authorities are cited in support of this contention. The case of In re Sibley, 88 F.2d 960, 24 C.C.P.A.,Patents, 1143, is stressed in this respect. We are of opinion that the legal question there presented is not the question presented here. In that case the question was whether it was invention to substitute in a general combination a different specific anti-oxident from that which was shown in the. combination reference. That question is not in this case. We have examined the other authorities cited by appellants on this contention and they do not appear to support it.

We have hereinbefore concluded that ordinarily no invention exists in the discovery of a property possessed by an old substance and it must necessarily follow that broadly the adding of such substance to a food to produce an already known effect likewise cannot be invention. Therefore, claim 5 does not constitute invention.

Appellants have cited a patent as indicating that they are equally entitled to a patent on the rejected claims. Under a long line of decisions by this court, the fact that others have obtained patents is irrelevant on the question of the patentability of appellants rejected claims. In re Fischer, 91 F.2d 219, 24 C.C.P.A.,Patents, 1344, and the cases cited therein.

It is quite clear that the decision of the examiner rejecting claims, such as claim 3, on the ground that they merely define the product in a purified form was proper. Lemon juice has been known for ages as a satisfactory specific for scurvy. Therefore, the case of Parke-Davis & Co. v. Mulford & Co., 2 Cir., 196 F. 496, wherein it is shown that the old source of adrenalin was. most unsatisfactory, referred to by appellants is inapplicable. In the instant case hexuronic acid C was isolated from other substances comprising lemon juice. Difference in degree of purity itself does not predicate invention. In re Merz, 97 F.2d 599, 25 C.C.P.A.,Patents, 1314; In re Macallum et al., 102 F.2d 614, 26 C.C.P.A.,Patents, 1026.

Since we find no error in the rejection of the appealed claims the decision of the Board of Appeals is affirmed.

Affirmed.