42 C.C.P.A. (Patents)
**Application of Charles E. INMAN.
Patent Appeal No. 6162.**

United States Court of Customs
and Patent Appeals.

Dec. 8, 1955.

------◆------

Dexter N. Shaw, Arvid E. Lyden, Philadelphia, Pa., and Harold L. Warner, Washington, D. C. (Howson and Howson, and William A. Smith, Jr., Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (J. Schimmel, Washington, D. C., of counsel), for Commissioner of Patents.

Before O'CONNELL, Acting Chief Judge, and JOHNSON, WORLEY, COLE and JACKSON, retired, Judges.

O'CONNELL, Acting Chief Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office sustaining the Primary Examiner's rejection of claims 11, 12, 13, and 14 of appellant's application No. 136,389 for a patent on a chlorinated hydrocarbon on the grounds of unpatentability over prior art and failure to distinguish patentably from the claims of appellant's co-pending application No. 136,388, now involved here in appeal No. 6161 which is a companion to the present appeal, 228 F.2d 226.

Claim 11, which is typical of the appealed claims, is as follows:

"11. As a new product of manufacture, a chlorinated petroleum hydrocarbon of average carbon atom content in the molecule in the range of $C_{10}$ to $C_{16}$, a combined chlorine content of over 65% chlorine by weight and a thermal stability as indicated by a thermo-decomposition rate at 180°C of less than 0.10 milligrams evolved HCl per gram material per minute after two hours continued heating at 180°C."

The references relied on are:

Clark 2,214,877 Sept. 17, 1940; Dean et al. "Industrial and Engineering Chemistry," Vol. 37, pages 181–185 (1945)

The application here involved is concerned with the chlorination of hydrocarbons, and especially those petroleum hydrocarbons having an average carbon atom content in the molecule in the range of $C_{10}$ to $C_{16}$, which range includes the hydrocarbon cuts commonly referred to as kerosene. The method by which such chlorination is effected is not in question and need not be considered here, since all the claims are directed to the product.

It is stated in the specification in this case that petroleum hydrocarbon cuts having an average of twenty or more carbon atoms per molecule, where chlorinated to above 65% combined chlorine, are overly darkened and unsatisfactory unless chlorination is carried out in an inert medium, and that such chlorina-

tion involves a substantial extra cost. As to petroleum hydrocarbon cuts in the kerosene range, the specification further states that chlorination has been carried out up to about 60%, but that the products have increasing instability as the chlorine content increases, so that chlorination above 60% has not been considered practicable.

The appellant's alleged invention is based on the discovery that if chlorination of kerosene is continued beyond the former alleged limit of 60%, an abrupt change in stability takes place, so that a chlorination of 70% results in a product which not only is much more stable than one having 60% chlorination, but is also more stable than those having a chlorination of 40 or 50%. Since the value of such products as flame retarding agents, for which purpose they are frequently used, increases with the degree of chlorination, it is alleged, appellant's discovery makes available a new, stable and effective compound.

The Dean et al. publication discloses the chlorination of kerosene up to 60% and includes charts and tables giving the properties of chlorinated kerosenes at intervals of 5%, beginning at zero and running up to 55% chlorination.

The Clark patent relates to an insulating composition consisting essentially of trichlorbenzene, tetrachlorbenzene and a chlorinated hydrocarbon. The specification states that the invention "is based on the discovery that highly chlorinated high molecular weight aliphatic compounds, when suitably prepared and purified, can be used without corrosive effects when in contact with metals in electric devices." .

The aliphatic compound selected by Clark for specific discussion and illustration of his invention, by way of example, is paraffin wax which falls outside the range of hydrocarbons claimed by the appellant. Clark states that chlorination of the paraffin wax should be carried to "at least about 50 per cent chlorine, and preferably to about 75 per cent chlorine." He gives four specific examples of insulating compositions, the first two include "Chlorinated paraffin (71.7% Cl)" as an ingredient, while the last two include "Chlorinated paraffin wax (50% Cl)."

Immediately following the fourth example is the following statement:

"In a similar way, compositions may be prepared from chlorinated paraffin oil, chlorinated kerosene, and other chlorinated aliphatic hydrocarbons."

The principal issue in this appeal is whether the quoted sentence, taken in conjunction with the preceding portion of Clark's specification, fairly suggests the use of kerosene chlorinated to 70 per cent or above. If it does, the Clark patent anticipates all the appealed claims, since the properties which they recite, according to the board, are inherent in such a chlorinated kerosene.

The board also held that "A chlorinated kerosene containing 70% chlorine would provide an anticipation of the claims on appeal," and found that Clark disclosed such a chlorinated kerosene.

We agree with the Board of Appeals that the Clark patent would disclose to a person skilled in the art a kerosene chlorinated to 70% or above. There is nothing in the sentence above quoted to limit its application to the two examples immediately preceding it, in which only 50% chlorination is employed. In our opinion the quoted sentence would be normally understood as applying to all the previously described compositions in which a chlorinated aliphatic compound is employed, including those in which the chlorination is 71.7%. We find nothing in Clark's specification to indicate that the degree of chlorination of kerosene, when used, is to differ from that of the other aliphatic compounds named by him. The fact that kerosene chlorinated above 60% may not be mentioned elsewhere in the art does not justify placing an interpretation on the Clark disclosure at variance with the normal meaning of the language used.

There is no apparent reason, according to the board, why a skilled worker seek-

ing to carry out Clark's suggestion of using chlorinated kerosene in place of chlorinated paraffin wax should assume that he must use a different degree of chlorination than that specified by Clark for the wax. There is nothing of record to show that chlorination of kerosene to 70% or more was considered impossible prior to the appellant's entry into the field, or even that such chlorination could not be obtained by an obvious extension of the conventional methods of chlorination. Under these circumstances, the fact that some prior art publications might indicate that kerosene chlorinated above 60% was not sufficiently stable for certain uses for the purposes specified by Clark, does not detract from the value of Clark's disclosure.

It was apparent to the board, upon consideration of Clark's specification as a whole, that a high degree of chlorination is one of the essential features of his invention and that he suggests, in general, the best results will be obtained by a chlorination of the aliphatic compound used to more than 70%. This holding seems clearly applicable to the chlorinated kerosene which Clark mentions as well as to the other chlorinated aliphatic compounds.

It is true that the sentence in the Clark patent which refers to kerosene does not expressly state that kerosene may be chlorinated in a similar way to paraffin wax, but in the opinion of the board, that composition may be prepared in a similar way from chlorinated kerosene and chlorinated paraffin wax. The chlorination of the aliphatic compound to a high degree is one of the essential steps disclosed by Clark in making his final compositions and accordingly his assertion that such compositions may be prepared from chlorinated kerosene "in a similar way" to that disclosed in connection with paraffin wax clearly implies that the degree of chlorination shall be substantially the same in each case.

The record shows that during the prosecution of the application on which the Clark patent was granted, Clark's attorney made statements to the effect that chlorinated petroleum oils were notoriously unstable. From these statements appellant argues that Clark could not have known of kerosene chlorinated above 65% since, as shown by the present application, such kerosene is not unstable.

In considering a similar argument raised by appellant on the petition for rehearing, the Board of Appeals said:

"We do not believe it proper to resort to opinions expressed by counsel at the prosecution of the application which resulted in the Clark patent to provide a different interpretation of that patent than the language of the description thereof justifies. The contentions of counsel in support of the claims of a pending application or in avoidance of a reference cannot be relied on to modify the language of the text of the patent used as a reference. We accordingly feel constrained to confine our attention to the actual text of the Clark patent."

We are in agreement with that statement. Where the meaning of the text of a patent is clear, as we have found it to be in the present case, it must be taken at its face value. Moreover, since Clark disclosed kerosene chlorinated above 70%, it is immaterial whether he or his attorneys knew what its properties were, or even how it could be made. In re Von Bramer, 127 F.2d 149, 29 C.C.P.A., Patents, 1018; In re Stoll, 161 F.2d 241, 34 C.C.P.A., Patents, 1058; In re Crosley, 159 F.2d 735, 34 C.C.P.A., Patents, 882; In re Shackell, 194 F.2d 720, 39 C.C.P.A., Patents, 847; In re Kebrich, 201 F.2d 951, 40 C.C.P.A., Patents, 780. A patent may not be properly granted on the basis of the discovery of a new property in a substance disclosed by the prior art. In re Heap, 74 F.2d 948, 22 C.C.P.A., Patents, 950; In re Newton, 96 F.2d 291, 25 C.C.P.A., Patents, 1106; In re Lewis, 108 F.2d 248, 27 C.C.P.A., Patents, 801.

For the reasons hereinbefore stated, we conclude that the Clark pat-

ent discloses kerosene chlorinated above 70%, and that such disclosure constitutes an anticipation of the appealed claims. It is accordingly unnecessary to consider the further rejection based on an alleged lack of patentable distinction between the claims here involved and the claims of appellant's application No. 136,388.

The decision of the Board of Appeals is affirmed.

Affirmed.

JACKSON, Judge, retired, recalled to participate.