Charles N. EUDY, Plaintiff-Appellant,

v.

MOTOR–GUIDE, HERSCHEDE HALL
CLOCK CO., a Division of Arnold In-
dustries, Inc., Defendant-Appellee.

No. 80–3449.

United States Court of Appeals,
Fifth Circuit.
Unit A

July 17, 1981.

Rehearings Denied Sept. 9, 1981.

John B. Farese, Ashland, Miss., for plaintiff-appellant.

Dolton McAlpin, Starkville, Miss., Pearce & Schaeperklaus, Roy Fred Schaeperklaus, Cincinnati, Ohio, for defendant-appellee.

Before CHARLES CLARK and RANDALL, Circuit Judges, and SHARP *, District Judge.

SHARP, District Judge:

On April 8, 1975 the Patent Office issued Patent No. 3,876,184 to Appellant, Charles N. Eudy, for his invention of an electrically powered anchor winch. On February 18, 1976 Eudy filed suit in the district court charging Appellee (1) infringed his patent by manufacturing a winch which copied his, (2) and was guilty of obtaining and utilizing trade secrets in producing its winch. Appellant sought damages under 35 U.S.C. § 284 as well as for unfair competition. Appellee denied the charges and filed four counterclaims charging Eudy with (a) fraud on the Patent Office, (b) unfair trade practice in dealing with Appellee and (c) unfair competition. The fourth counterclaim sought a declaratory judgment as to the invalidity of the Eudy patent. Appellant denied the counterclaims.

The district court dismissed the Appellant's unfair competition count based on affidavits on June 28, 1977. On November 2, 1978 the district court issued an order which declared Eudy's patent void and invalid and dismissed the claim for infringement. The court further ordered that the letters patent were not infringed and that Eudy was guilty of fraud on the patent office. The district court subsequently adopted these orders as its final judgment.

* District Judge of the Northern District of Indiana, sitting by designation.

On October 5, 1979, 604 F.2d 17, this court ruled that the then present posture prohibited the exercise of its appellate jurisdiction. The case was remanded to the district court.

On May 22, 1980 the district court held a hearing on Eudy's motion to reconsider and reopen. Eudy requested permission to demonstrate the differences between his electric winch and the prior art handcranked winch. The district court stated that Eudy had in effect just attached a motor to a handcranked winch and reiterated its final judgment. This appeal followed.

This appeal can best be decided from the exact language used by the district judge in the orders above described. The order of June 28, 1977 (entered on June 30, 1977) states:

Defendant having pursuant to Rule 56, Federal Rules of Civil Procedure moved the entry of summary judgment dismissing COUNT II of the Complaint, and,

It appearing that Defendant received no confidential disclosure of any information, data or trade secret from Plaintiff, and there is no genuine issue as to any material fact as all material facts are established by the sworn deposition testimony of Plaintiff, Charles N. Eudy, and related exhibits, and,

It further appearing that the defendant, Arnold Industries, Inc., is entitled as a matter of law to the judgment sought, said motion is sustained and it is hereby ORDERED, ADJUDGED AND DECREED

That Count II of the Complaint is without merit and hereby dismissed forthwith, and Defendant shall recover its costs to be taxed according to law.

The order of November 2, 1978 (entered November 3, 1978) states:

Defendant having, pursuant to Rule 56, Federal Rules of Civil Procedure, moved entry of summary judgment, that

1. United States Letters Patent 3,876,184 are invalid, void and unenforceable and as such not infringed, and

2. Count 1 of the complaint is dismissed, and,

3. Defendant's First Counterclaim is sustained, and

It appearing that plaintiff, Charles N. Eudy, was not the first inventor of the invention which is the subject matter of U.S. Letters Patent 3,876,184 as that invention was embodied in AnchorMate winches both known to and used by Eudy and others in this country during the period of at least ten (10) years next preceding Eudy's alleged making of said invention in 1972, and, it also appearing that the invention was made in this country by another, the inventor of the AnchorMate winch, before Eudy's purported invention thereof, which AnchorMate winch was in public use and on sale in this country more than one year prior to October 2, 1972, the date of Eudy's application, and it further appearing that the invention which is the subject matter of said patent would have been obvious from the prior art to a person having ordinary skill in the art to which said subject matter pertains at the time Eudy purportedly made said invention, there is no genuine issue as to any material fact as to all material facts are established by the sworn testimony of plaintiff, Charles N. Eudy, and related exhibits, and

It Further appearing that the Defendant, Arnold Industries, Inc., is entitled as a matter of law to the judgment sought, said motion is sustained and it is hereby ORDERED, ADJUDGED AND DECREED

(1) That United States Letters Patent 3,876,184 are invalid, void and could not heretofore and cannot now or hereafter be infringed;

(2) That Count I of the complaint is without merit and hereby dismissed forthwith;

(3) That defendant's First Counterclaim is meritorious and hereby sustained forthwith, and

(4) That defendant shall recover its costs to be taxed according to law.

The order of final judgment entered May 27, 1980 (dated May 22, 1980) states:

On Motion of defendant and on the prior Orders of this Court dated June 28, 1977, entered June 30, 1977, and dated November 2, 1978, entered November 3, 1978, it appearing to the Court that there is no just reason for delay in entering final judgment on plaintiff's complaint, defendant's first counterclaim and certain of the plaintiff's prayers for relief, it is pursuant to Rule 54(b) of the Federal Rules of Civil Procedure,

ORDERED that FINAL JUDGMENT be entered herein,

(1) That United States Letters Patent 3,876,184 are invalid, void and could not heretofore and cannot now or hereafter be infringed;

(2) That Count I of the Complaint is without merit and hereby dismissed forthwith;

(3) That defendant's First Counterclaim is meritorious and hereby sustained forthwith;

(4) That COUNT II of the Complaint is without merit and hereby dismissed forthwith;

(5) That United States Letters Patent 3,876,184 were procured by practice of fraud on the Patent Office, wherefore this is an "exceptional case" within the meaning of 35 U.S.C. § 285 and defendant shall recover reasonable attorneys fees to be fixed by this Court at a reasonable date after expiration of time for appeal from this judgment has expired without appeal being taken or after all appellate action has terminated and mandate of affirmance has been filed in this Court; and,

(6) That defendant shall recover its costs to be taxed according to law.

The legal principles that must guide us in a determination of the validity of this patent were well and fully stated by this court in *Cathodic Protection Service v. A. M. Smelting*, 594 F.2d 499 (5th Cir. 1979), at pages 505–513, and need not be restated here. For an additional and recent statement of relevant authority, see *I. U. Technology Corporation v. Research-Cottrell, Inc.*, 641 F.2d 298 (5th Cir. 1981).

■ An invention to be patentable must meet the standards expressed in the Constitution and the conditions set forth in Section 101, 102 and 103 of the Patent Act. It is a fundamental rule that the patentee must be the first inventor. See *Alexander Milburn Co. v. Davis-Bournonville Co.*, 270 U.S. 390 at page 402, 46 S.Ct. 324, at page 325, 70 L.Ed. 651 (1926).

■ During the course of the prosecution of the application for the Eudy 184 patent it was specifically set forth in the applicant's application to the Patent Office on June 24, 1974 as follows:

Prior to considering the rejections of the claims and the prior art on which they are based, it is considered appropriate to set forth applicant's invention to place the issues of the rejection in their proper perspective.

Applicant's invention provides a powered anchor winch with a simple, compact helical spring cluth release devise which holds the anchor line in a desired position, preventing the weight of the anchor from unreeling the line from the drum unless the release device is activated. The release device further provides for a varied rate of unreeling of the anchor line. The helical clutch spring is always fixed to the drive shaft collar 4 by the keyed connection between the spring end 5a and the collar slot 4a, and by frictional engagement of the upper coils of the spring clutch 5 to the driving collar 4. Only the drum hub is releasable for reverse rotation of the drum relative to the drive shaft and driving collar. The drum is not releaseable while it is being driven. Accordingly, these features and limitations, as set out in the claims, provide the workable structure required for applicant's invention.

Eudy testified to his intimate knowledge of the AnchorMate handcranked winch structure and to the fact that he knew the AnchorMate structure for upwards of ten years prior to 1972 when he claims to have made the invention which is the subject matter of the 184 patent. A comparison of the patent claims and the Eudy testimony in regard to the same is helpful and enlightening:

| Alleged Eudy Invention | Eudy's Testimony as to His Invention |
|---|---|
| Applicant's invention provides a powered anchor winch | Q  Were you aware of any winches existent before you developed your winch?<br>A  Yes.<br>Q  Could you identify any of those particular items that you are acquainted with in the past?<br>A  I'm acquainted with the Anchormate hand - cranked winch. That's been on the market for many years. [R. 286, lines 16-22]<br>Q  Is the Anchormate winch a hand-powered winch?<br>A  Right. [R. 303, lines 13-14] |
| with a simple, compact helical spring clutch release device which holds the anchor line in a desired position, | Q  So it has a helical spring clutch release device, doesn't it?<br>A  Right.<br>Q  And when it's not released, the clutch holds the anchor |

| Alleged Eudy Invention | Eudy's Testimony as to His Invention |
|---|---|
| | line in desired position, doesn't it?<br>A    Right. [R. 304, lines 6-11] |
| preventing the weight of the anchor from unreeling the line from the drum unless the release device is activated. | Q    And it prevents the weight of the anchor from unreeling the line from the drum?<br>A    Right.<br>Q    Unless the release device is activated?<br>A    Right. [R. 304, lines 12-16] |
| The helical clutch spring is always fixed to the drive shaft collar 4 by the keyed connection between the spring end 5a and the collar slot 4a, | Q    And the helical clutch spring is also affixed to the drive shaft collar of the hand crank?<br>A    The Anchormate doesn't have a collar.<br>Q    It's locked to the hand crank, isn't it?<br>A    Locked to the crank; yes. [R. 304, lines 20-24] |
| and by frictional engagement of the upper coils of the spring clutch 5 to the driving collar 4. | Q    And then there are frictional engagement of the upper coils of the spring clutch to the drive collar of the drum?<br>A    I believe that's right. [R. 304, line 25 — R. 305, line 3] |
| Only the drum hub is releasable for reverse rotation of the drum relative to the drive shaft and driving collar. | Q    And what you release when you turn the release knob in the Anchormate winch is the drum hub from the helical coil spring clutch, which engages it that permits the drum to reverse and pay out the anchor cable, doesn't it?<br>A    Yes. [R. 305, lines 4-8] |
| The drum is not releasable while it is being driven. | Q    And when you are turning the hand crank on the Anchormate, you can't release the drum by turning the knob, can you?<br>A    Haven't tried it. [R. 305, lines 9-12] |

---

It is readily apparent from the record that the invention which is the subject matter of the 184 patent is not an invention to which Eudy was, in fact, the first inventor for he could not be the first inventor of an invention embodied in the AnchorMate winch on the market for upwards of ten

years before he purportedly made that "invention".

The condition that the invention was not known by others in this country before the invention thereof by Eudy [35 U.S.C. § 102(a)] was not and could not be met by Eudy's "invention" in early 1972 as his testimony is that the AnchorMate winch embodying that invention was then on the market and had been since at least early 1960–1961. Eudy's own testimony established the invention was known by others, those who made, those who distributed, those who sold, and those who, like Eudy bought and used AnchorMate winches in this country for at least ten years before Eudy in early 1972 purportedly made that same "invention", the subject matter of the 184 patent. The district court's finding that "the invention ... of ... Patent 3,876,184... was embodied in AnchorMate winches ... known to ... Eudy and others in this country during the period of at least ten years next preceding Eudy's alleged making of said invention in 1972, ..." is supported by undisputed evidence of record. Affirmance of the district court's judgment that the 184 patent is invalid, is therefore additionally in order as a matter of law pursuant to Title 35, U.S.C. § 102(a).

The condition that the invention was not used by others in this country before the invention thereof by Eudy [35 U.S.C. § 102(a)] was not and could not be met by Eudy's "invention" in early 1972 as Eudy has testified herein that the AnchorMate winch embodies the invention which is the subject matter of the 184 patent. He testified in response to question by the district court that AnchorMate winch, "... has been on the market for many many years. And they are very useful and widely used." [R. IV 11]. His earlier deposition testimony was he knew they were marketed since at least as early as 1960–1961. The district court's finding that "the invention ... of ... Patent 3,876,184 ... was embodied in AnchorMate winches ... used by Eudy and others in this country during the period of at least ten years next preceding Eudy's alleged making of said invention in 1972, ..." is supported by undisputed evidence of record. It is clear under such facts that AnchorMate winches embodying the invention of the 184 patent were used by Eudy and others in this country before Eudy's "invention" in early 1972. Eudy's "invention" was not patentable upon his application as said condition for patentability specified in 35 U.S.C. § 102(a) constituted a bar, and affirmance of the district court's judgment is in order as a matter of law on such additional ground.

The condition that the invention was not in public use in this country more than one year prior to the date of the application for patent in the United States ([35 U.S.C. § 102(b)] was not and could not be met by Eudy's "invention", as marketing of the AnchorMate beginning in 1960–1961 necessarily involved public use of "the invention" more than one year prior to Eudy's application filing date of October 2, 1971 as evidenced by his answer [R. IV 11] under oath to question by the district court mentioned in the next preceding paragraph hereof. Eudy's testimony of record is undisputed evidence supporting the district court's finding that "... the invention of the AnchorMate winch, before Eudy's purported invention thereof, ... was in public use ... in this country more than one year prior to October 2, 1972, the date of Eudy's application..." wherefore affirmance of the district court's judgment is in order as a matter of law on such additional ground.

The condition that the invention was not on sale in this country more than one year prior to the date of the application for patent in the United States [35 U.S.C. § 102(b)] was not and could not be met by Eudy's "invention" in early 1972 for the AnchorMate's inventor made the "invention" before that winch was made in this country by another, the inventor of the AnchorMate winch, before Eudy's purported invention thereof, ..." [R. 463] is well supported by undisputed evidence of record, and affirmance of the district court's judgment is in order as a matter of law on such additional ground.

■ The district court found that the subject matter of the patent would have been obvious from the prior art to a person having ordinary skill in the art to which the subject matter pertains under Section 103 of the Patent Act. An invention is not patentable under the obviousness/non-obviousness tests of Section 103 "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which the subject matter pertains". *Graham v. John Deere*, 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545 (1976). As the AnchorMate winch by Eudy's own testimony embodies the invention which is the subject matter of the 184 patent that invention was obvious from the prior art AnchorMate winch. The district court's finding is clearly supported by the evidence of the record as is the conclusion drawn therefrom that the 184 patent is invalid and void as a matter of law.

■ The legal principles that must guide us in regard to misrepresentations to the Patent Office were stated by this court in *Parker v. Motorola*, 524 F.2d 518 (5th Cir. 1975), at pages 534–535:

Our start is with the rubric that because the grant of a patent affected with a public interest, an applicant owes "an uncompromising duty to report to [Patent Office] all facts concerning possible fraud or inequitableness underlying the applications in issue." *Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.*, 1945, 324 U.S. 806, 818, 65 S.Ct. 993, 999, 89 L.Ed. 1381, 1388; *Kingsland v. Dorsey*, 1949, 338 U.S. 318, 319, 70 S.Ct. 123, 124, 94 L.Ed. 123, 126. The concept that a patent is invalid because of misconduct by the patentee in proceedings before the Patent Office goes beyond the classical definition of fraud, and encompasses a wide variety of inequitable conduct. *Carter-Wallace, Inc. v. David-Edwards Pharmacal Corp.*, 2 Cir. 1971, 443 F.2d 867, 881; *Norton v. Curtiss*, 1960, 433 F.2d 779, 793, 57 C.C.P.A. 1384. Although the type of misconduct

before the Patent Office which results in the invalidity of a patent admits to no fixed parameters, it is necessary that there be some element of wrongfulness, willfulness, or bad faith. See *Monsanto Co. v. Rohm & Haas Co.*, 3 Cir. 1972, 456 F.2d 592, 597, cert. denied, 407 U.S. 934, 92 S.Ct. 2463, 32 L.Ed.2d 817; *A. H. Emery Co. v. Marcan Products Corp.*, 2 Cir. 1968, 389 F.2d 11, cert. denied 393 U.S. 835, 89 S.Ct. 109, 21 L.Ed.2d 106; *Xerox Corp. v. Dennison Mfg. Co.*, D.C.N.Y.1971, 322 F.Supp. 963, 969. Hence, mere negligent omissions or misstatements to the Patent Office do not provide sufficient basis for a finding of fraud or misrepresentation by an applicant for a patent. *Xerox Corp., supra.*

In *Beckman Instruments, Inc. v. Chemtronics, Inc.*, 5 Cir. 1970, 439 F.2d 1369, cert. denied 400 U.S. 956, 91 S.Ct. 353, 27 L.Ed.2d 264, this Court held the patent in suit invalid (i) as anticipated by the prior art, and (ii) because of intentional nondisclosure to the Patent Office by the patentee in securing the patent. *Id.* at 1374–80. We found in *Beckman*, that the patentee deliberately withheld from the Patent Office knowledge of prior art, which would, if known by the Examiner, have resulted in the denial of the patent, and, therefore, the patent was invalid. *Id.* at 1374, 1378, 1379. Similarly, in both *Armour & Co. v. Swift & Co.*, 7 Cir. 1972, 466 F.2d 767, and in *Monsanto Co. v. Rohm & Haas Co., supra*, relied on by Motorola, there was evidence that the respective patentees made knowingly false statements and concealed material facts which would have resulted in the denial of the patent by the Patent Office.

■ The district court determined under 35 U.S.C. § 285 that this is an exceptional case and that the appellee as the prevailing party was entitled to recover attorney fees and costs. The record here does not support the findings as to exceptional case. This circuit in *Parker* requires "some element of wrongfulness, wilfulness, or bad faith" as a prerequisite to finding fraud on the Patent Office. Other circuits may impose a slightly heavier standard referring to "strict proof" or "clear and definite proof"

of wrongful conduct. See *Carpet Seaming Tape Licensing v. Best Seam, Inc.*, 616 F.2d 1133, 1138–39 (9th Cir. 1980); *Super Products Corp. v. D. P. Way Corp.*, 546 F.2d 748, 758 (7th Cir. 1976); and *Pfizer, Inc. v. International Rectifier Corp.*, 538 F.2d 180, 186–187 (8th Cir. 1976).

The findings entered by the district court are insufficient to show that Eudy acted in bad faith or wilfully. The only explicit finding is that "this is an exceptional case". There is nothing in the findings or record to demonstrate that Eudy acted with intent to deceive the Patent Office. At worst, the record shows that Eudy's *pro se* actions before the Patent Office were incompetent. He may have been guilty of bungling but not of fraudulent manipulation of the Patent Office.

The district court's findings in regard to exceptional case are not supported by the record. All other findings are supported by the record. The final judgment entered May 27, 1980, should be affirmed on all issues but the exceptional case issue. As to all relief granted in paragraph (5), the said judgment is reversed.

AFFIRMED in part and REVERSED in part.