Eugene L. GRINDLE, Plaintiff,

v.

C. Martin WELCH, doing business as C. Martin Welch & Company, Defendant.

Civ. A. No. 34531.

United States District Court
N. D. California, S. D.

Oct. 29, 1956.

Flehr & Swain, San Francisco, Cal., for plaintiff.

Naylor & Neal, San Francisco, Cal., for defendant.

EDWARD P. MURPHY, District Judge.

This is a suit for the declaration of invalidity of a patent, No. 2,534,644, and for certain relief incident to the invalidation of that patent, including damages and the assignment of the patent to the claimed true inventor. Jurisdiction arises under 28 U.S.C. § 2201.

The patent in question concerns a measuring device to determine the quantity of gasoline in the wing tanks of airplanes, known as a "dipstick." The dipstick is a liquid fuel column gauge, of a type long familiar. A patent issued as long ago as May 26, 1863, to one Hyde (No. 38,681) for a "cask gauge" described the essentials of the gauge as being a tube or cylinder "made of transparent glass, or its equivalent, and left open at either end", enclosed within the center of a square slitted rod "made of wood, metal, gutta-percha, or any other suitable material, so that either end of the rod shall be flush with the ends of the enclosed tube", and with suitable gauging scales marked on the four sides of the enclosing rod, each adapted to a particular type of cask, so that by observing the level of the fluid in the central measuring tube, the content of the cask or vessel could be ascertained. The operation of the device is the same as that used by children playing with straws. The tube is inserted vertically into the liquid to the bottom of the vessel. The operator then closes the top of the tube, either with his finger, or with some sort of valve, and withdraws the tube. The atmospheric pressure on the lower end of the tube, as it is lifted from the liquid, retains the liquid in the tube (up to its point of specific gravity). Hyde in his 1863 patent said:

"It is evident that the height of the column of liquid thus confined in the tube will indicate the depth of its previous immersion in the body of the fluid, and by comparing this column with a properly-graduated scale the quantity of liquid in any given cask or vessel can be accurately ascertained almost at a glance."

In 1922, another patent was issued to one Schmitt (No. 1,423,156) for essentially the same type of liquid fuel column gauge, differing only in the manner in which the central measuring tube is supported by the outer structure upon which the gradations are marked, and the slits in the outer structure through which the level of the liquid in the measuring tube may be observed.

This was the state of the prior art in liquid fuel column gauges. It is unneces-

sary to speculate upon whether the devices described in the Hyde and Schmitt patents were ever sufficiently "inventive" within the meaning of the patent laws to be patentable.

In 1948 the plaintiff in the instant case, Grindle, an engineer employed by Pan American Airways, developed at the request of his employer a dipstick, or liquid fuel column gauge, which would render more satisfactory service than those then in use. Grindle developed, apparently without knowing of the Hyde and Schmitt patents, a stick which consisted essentially of several measuring tubes, rather than one, joined in a single assembly, and made of plastic. He then contacted the defendant, Welch, at that time a representative for a plastics products firm, and handed him detailed drawings and a mock-up sample of the stick he had designed, for the purpose of securing price quotations from the defendant's employer. Defendant's employer returned the plans with the report that the particular shapes of plastic required to accommodate the plaintiff's design would be too costly to manufacture, and sent along several items of standard plastic tubing, called "extrusions", to inquire of plaintiff whether they would be adaptable to his needs. After some experimentation and consideration of various alternative expedients, plaintiff Grindle devised a dipstick incorporating standard plastic extrusion parts. In all essentials, the dipstick as finally submitted by plaintiff Grindle to defendant Welch and the latter's employer by means of a complete sketch and mock-up sample was the dipstick incorporated ultimately in Patent No. 2,534,644.

At the time of submission of the plans and mock-up of the dipstick to Welch, Grindle had no thought of patenting the stick, and no desire to keep the device secret for purposes of personal commercial exploitation or for any other purpose. He understood that because of the development work done by his employer, Pan American, through himself, the employer would receive a favorable purchase price quotation from the ultimate producer of the stick, whether that producer was to be Welch's employer or Welch himself. There was no disclosure by Grindle to Welch of any confidential nature which could lead to a recompensable breach of trust on the part of Welch.

It appears that during the period of final development of the dipstick, Welch had formed the plan to set himself up in the dipstick manufacturing business. He did so, and commenced to supply dipsticks in conformity with the plans drawn by Grindle. There were two minor variations in the stick as delivered and the stick as designed, and these variations (consisting of the substitution of radial grooves for square cut grooves in the wooden filler which spaced the two plastic measuring tubes inside the over-all square plastic housing tube, and of the substitution of plastic cement fill for the solid end plugs which Grindle had originally designed to shut off the ends of the square housing tube) were accepted by Grindle for Pan American because they had no appreciable effect on the functioning of the dipstick as designed by Grindle. They were minor details of construction or manufacture, "bugs", that every manufacturer encounters in the construction of his products, and that are eliminated by altering minor details which leave the product as a whole unaffected. The same is true for the protrusion of the tubes beyond the end pieces. Any skilled mechanic, or any person who has had some experience in working with plastics, could have accomplished the substitution of the cement mass for the end plugs, and the radial grooves for the square cut grooves, as well as the protrusion of the tubes beyond the end seals.

Welch commenced production of the sticks and made his first delivery to Pan American on August 12, 1948. That date marked the beginning of public use of the dipstick. Grindle was soon thereafter assigned to other duties and took no further interest in the dipstick. Thereafter, on August 12, 1949, Welch filed for a patent on the dipstick, swearing that he was the true inventor. His patent

application contained three claims. Claim 1 was the dipstick as disclosed in Grindle's drawing No. D–32.061.114, published on June 10, 1948. Claims 2 and 3 varied a few minor details of construction as, for example, using end plugs instead of a cement mass to seal the ends of the plastic housing tube through which the two measuring tubes protruded (the original Grindle drawing had provided for similar end plugs, and was changed to suit the production convenience of Welch), the protrusion of the tubes beyond the end pieces, and adding a nail as an additional means of securing the end plugs. None of the variations of Claims 2 and 3 from Claim 1 were substantial improvements. They were changes of a sort which any mechanic, in or out of the plastics field, might have devised in the course of construction. Essentially, all three claims were the same claim, namely a claim on the device substantially as pictured in the Grindle drawing of June 10, 1948.

With its customary magnanimity, the Patent Office issued patent No. 2,-534,644 to Welch. That patent was void and invalid because not filed by the true inventor; because filed more than one year after the first public use of the product described; because it does not teach invention over the prior art disclosed by the Hyde and Schmitt patents referred to earlier. Each of these grounds of invalidity is sufficient in and of itself to make clear that the patent in question is void and of no effect.

Plaintiff seeks damages for having been prevented from producing his own device, by the threat of the defendant that he would sue plaintiff for patent infringement. In 1953, plaintiff learned that defendant had patented the dipstick and developed its manufacture into a profitable venture. Not unnaturally, he thereupon decided to do likewise, and to reap the fruits of his own developmental work himself. Defendant thereupon threatened an infringement suit. Plaintiff's proof of damages, however, is insufficient. Only his own testimony as to his putative market is in evidence. Dam-

ages, if they were to be awarded here, would be entirely speculative as to both existence and amount. Plaintiff is therefore not entitled to damages.

Plaintiff further seeks an assignment of the invalid patent to himself, and an estoppel of defendant to deny the validity of the patent. In Kennedy v. Hazelton, 1888, 128 U.S. 667, 9 S.Ct. 202, 203, 32 L.Ed. 576, the Supreme Court refused to require a defendant to assign a patent which had been issued to someone not the true inventor. Since the patent was void, there was nothing to assign. The Court said:

"As the patent, upon the plaintiff's own showing, conferred no title or right upon the defendant, a court of equity will not order him to assign it to the plaintiff—not only because that would be to decree a conveyance of property in which the defendant has, and can confer, no title; but also because its only possible value or use to the plaintiff would be to enable him to impose upon the public by asserting rights under a void patent. Post v. Marsh, 16 Ch.Div. 395; Oldham v. James, 14 Ir.Ch. 81.

"The bill cannot be maintained for an account of profits received by the defendant from the use of this patent, because a decree for profits can only proceed upon the ground that the plaintiff is at least the equitable owner of the patent, and there can be neither legal nor equitable ownership of a void patent. The same reason is a sufficient answer to the suggestion of the plaintiff that the bill may be maintained as a bill to remove a cloud upon his title in this patent."

Plaintiff has cited a number of cases for the proposition that title to a void, or non-existent, patent may nevertheless be assigned to the true inventor, and the assignor may be estopped thereafter to assert its invalidity. But none of those cases stands for so inherently artificial a proposition. Zachs v. Aronson, D.C.D.Conn.1943, 49 F.Supp. 696,

698, concerned the effect of a prior state judgment in a controversy involving a patent. The federal court held that no grounds for a declaratory judgment action were stated. Regarding the assignability of a void patent, the court said as a matter of dictum that it construed the state judgment "to eliminate the finding that the plaintiff was not the true inventor; it felt that that finding was not essential to the decree." Thus, the court continued, "a direct conflict with the Kennedy case is not involved." Id., 49 F. Supp. at page 698. There was other dictum in the Zachs case, regarding the effect which might be given in a federal court to a prior state judgment requiring the assignment of a void patent. That dictum, like the opinion of the Supreme Court in Becher v. Contoure Laboratories, 1928, 279 U.S. 388, 49 S.Ct. 356, 73 L.Ed. 752, concerns the question of the extent to which the principle of res judicata and the interrelationship of federal and state courts require the enforcement of state judgments, although there may be a logical inconsistency in such judgments. These cases arise usually in connection with an assignor's attempt, subsequent to his assignment of a patent, to renege on his assignment and to raise the issue of invalidity. In such circumstances, an estoppel bars the assignor from beclouding the title he has himself purported to confer. See Westinghouse Electric & Manufacturing Co. v. Formica Insulation Co., 1924, 266 U.S. 342, 349, 45 S.Ct. 117, 69 L.Ed. 316. It should be noted that the decisions in those cases have the effect of preventing the issue of the validity of the patent from being reached by the parties, if the party seeking to raise the issue is the assignor. Cf. U. S. Appliance Corp. v. Beauty Shop Supply Co., Inc., 9 Cir., 1941, 121 F.2d 149.

■ In the case at bar, no principle of estoppel bars the plaintiff from raising the issue of invalidity. Indeed, he does no more than invoke a statute of Congress in doing so. However, by the same token, having properly demonstrated the invalidity of the patent, he may not then ignore that invalidity and demand an assignment of the void patent. To follow the plaintiff's theory would be to grant him a patent despite the fact that for five years after its first public use, he made no effort to patent his device; that if he had properly applied for a patent within a year after the first public use of his device, the patent would have been void for teaching no improvement over prior art; and his grant would be founded on the fact that another had falsely claimed to have been the inventor, although even that claim was made only after the statutory period had elapsed. No result so absurd can be supported by resort to the principles of equitable estoppel.

■ Although the particular relief sought by the plaintiff is improper, he should not go without some relief to equalize his business opportunity with that of the defendant. Therefore, defendant Welch is enjoined to inform each and every one of his past purchasers of the dipstick or a substantial equivalent thereof, and each and every person to whom he has offered said dipstick or a substantial equivalent thereof for sale by means of letter of offer, circular, invitation to bid or otherwise, that said dipstick or substantial equivalent thereof is not patented, notwithstanding any previous statement or notation on the sticks or elsewhere to the contrary, and defendant Welch is further enjoined from continuing to mark any dipsticks or substantial equivalents thereof, or to sell any such dipsticks or substantial equivalents thereof already so marked, with any notation of a patent number or the pendency of a patent, and from advertising, offering, or suggesting in any manner that the dipsticks are patented. Let an appropriate decree, and findings of fact and conclusions of law, if the latter are desired, be prepared by the plaintiff.

I have considered plaintiff's request for counsel fees and costs, and do not feel that this is a proper case to exercise the power of the court to award such fees and costs. Each party will bear its own costs. It is so ordered.