**C. Martin WELCH, Appellant,**

v.

**Eugene L. GRINDLE, Appellee.**

**No. 15540.**

United States Court of Appeals
Ninth Circuit.

Dec. 31, 1957.

Naylor & Neal, James M. Naylor, Frank A. Neal, San Francisco, Cal., for appellant.

Flehr & Swain, Paul D. Flehr, John F. Swain, Harold C. Hohbach, San Francisco, Cal., for appellee.

Before STEPHENS, Chief Judge, and BARNES and HAMLEY, Circuit Judges.

BARNES, Circuit Judge.

This is an appeal [1] from a judgment of the lower court that Patent No. 2,534,-644 [2] is invalid and void. The patented article is a "Liquid Measuring Gauge," commonly known in the airline industry as a "Fuel Tank Dipstick." The trial court, having jurisdiction,[3] held the patent invalid because:

(1) the application for patent was not filed by the true inventor;

(2) the application for patent was filed more than one year after public use of the patented article; and

(3) the patented article does not teach invention over the prior art.

Plaintiff-appellee (hereinafter called Grindle) and defendant-appellant (hereinafter called Welch) sued below by an original complaint for declaratory relief, alleging a justiciable controversy, because he (Grindle) had demanded an assignment of the Letters Patent to him; that Welch had refused to assign, and had threatened Grindle with suit if Grindle undertook the manufacture and sale of dipsticks incorporating the subject matter of the Letters Patent. By amended complaint, filed by permission of the trial court at the conclusion of the evidence (Fed.Rules of Civ.Proc. 15(b), 28 U.S.C.A.), Grindle alleged the organization of Deterjet Corporation, a corporation, with adequate financial resources, and with cost studies, tools, jigs and quotations on components, and production models of the dipstick, and an existing manufacturing operation on at least one other product. Grindle charged that Welch had threatened infringement litigation seeking to enforce the Letters Patent.

Grindle prayed that the patent be declared invalid; that it be assigned to him; that Welch be estopped to deny the validity of the patent after assignment; that Welch be enjoined from further manufacture and sale of dipsticks; that Welch render an accounting to Grindle; for costs; and for attorney's fees.

The trial court after finding the patent invalid and void denied damages because the putative damages were not proven; denied the assignment requested because the patent was void and invalid; held that the defense of estoppel barring Grindle from raising the issue of invalidity was not good; denied counsel fees and costs to Grindle; but enjoined Welch: (a) requiring him to inform past and possible future customers that said dipstick, or the substantial equivalent thereof, is not patented; (b) from claiming on the same articles by markings any existing patent, or patent proceedings pending, or advertising or suggesting in any manner that the dipsticks are patented.

Leaving for later consideration the question of whether an actual judiciable controversy did exist between the parties (28 U.S.C.A. § 2201), we turn to the evidence.

## I. The Facts

Rather than discuss the factual situation leading to the issuance of the patent in suit, we are tempted to rely on the testimony of Welch, given by deposition on file herein, and merely state that Welch confessed error; that he had invented nothing.[4] But the case below was not tried on that theory, and counsel for appellant assures us a mistake in transcription was made by the shorthand reporter. We therefore will briefly consider the facts.

We adopt here the language the trial court used in his Memorandum Order:

"In 1948 the plaintiff in the instant case, Grindle, an engineer em-

---

1. 28 U.S.C.A. §§ 1291, 1292(4).

2. Filed August 17, 1949. Granted December 19, 1950 to C. Martin Welch.

3. 28 U.S.C.A. § 2201.

4. Deposition of C. Martin Welch, taken by plaintiff January 12, 1956, p. 4, lines 2 to 5:
"Q. Did you know anything about dipsticks before you met Mr. Grindle? A. Not a thing.
"Q. Have you ever invented anything for the patent in suit? A. No."

ployed by Pan American Airways, developed at the request of his employer a dipstick, or liquid fuel column gauge, which would render more satisfactory service than those then in use. Grindle developed, apparently without knowing of the Hyde and Schmitt patents, a stick which consisted essentially of several measuring tubes, rather than one, joined in a single assembly, and made of plastic. He then contacted the defendant, Welch, at that time a representative for a plastics products firm, and handed him detailed drawings and a mock-up sample of the stick he had designed, for the purpose of securing price quotations from the defendant's employer. Defendant's employer returned the plans with the report that the particular shapes of plastic required to accommodate the plaintiff's design would be too costly to manufacture, and sent along several items of standard plastic tubing, called 'extrusions', to inquire of plaintiff whether they would be adaptable to his needs. After some experimentation and consideration of various alternative expedients, plaintiff Grindle devised a dipstick incorporating standard plastic extrusion parts. In all essentials, the dipstick as finally submitted by plaintiff Grindle to defendant Welch and the latter's employer by means of a complete sketch and mock-up sample was the dipstick incorporated ultimately in Patent No. 2,534,644.

"At the time of submission of the plans and mock-up of the dipstick to Welch, Grindle had no thought of patenting the stick, and no desire to keep the device secret for purposes of personal commercial exploitation or for any other purpose. He understood that because of the development work done by his employer, Pan American, through himself, the employer would receive a favorable purchase price quotation from the ultimate producer of the stick, whether that producer was to be Welch's employer or Welch himself. There was no disclosure by Grindle to Welch of any confidential nature which could lead to a recompensable breach of trust on the part of Welch.

"It appears that during the period of final development of the dipstick, Welch had formed the plan to set himself up in the dipstick manufacturing business. He did so, and commenced to supply dipsticks in conformity with the plans drawn by Grindle. There were two minor variations in the stick as delivered and the stick as designed, and these variations (consisting of the substitution of radial grooves for square cut grooves in the wooden filler which spaced the two plastic measuring tubes inside the over-all square plastic housing tube, and of the substitution of plastic cement fill for the solid end plugs which Grindle had originally designed to shut off the ends of the square housing tube) were accepted by Grindle for Pan American because they had no appreciable effect on the functioning of the dipstick as designed by Grindle. They were minor details of construction or manufacture, 'bugs', that every manufacturer encounters in the construction of his products, and that are eliminated by altering minor details which leave the product as a whole unaffected. The same is true for the protrusion of the tubes beyond the end pieces. Any skilled mechanic, or any person who has had some experience in working with plastics, could have accomplished the substitution of the cement mass for the end plugs, and the radial grooves for the square cut grooves, as well as the protrusion of the tubes beyond the end seals.

"Welch commenced production of the sticks and made his first delivery to Pan American on August 12, 1948. That date marked the beginning of public use of the dipstick. Grindle was soon thereafter assign-

ed to other duties and took no further interest in the dipstick. Thereafter, on August 17, 1949, Welch filed for a patent on the dipstick swearing that he was the true inventor." [146 F.Supp. 46.]

## II. The Validity of the Patent

■ Welch claims that the "concept" expressed in the Letters Patent was entirely different from the "concept" admittedly originally presented to him by Grindle. Welch states the difference lies in (a) the substitution of radial grooves (in the supporting inner wooden filler) for square cut grooves, housing the two inner plastic tubes; (b) the substitution of plastic and cement lamination fillers for solid end plugs; (c) the substitution of tubes protruding one-eighth of an inch beyond the upper edge of the top plug for tubes flush with the upper edge.

Upon oral argument, it was admitted that the concept of the radial grooves, rather than square grooves, for the support of the inner plastic tubes came not from Welch, but from one Kerr, in 1948 a vice-president of Plastic Process Company of Los Angeles, the company for whom Welch was the San Francisco salaried sales representative, in reply to a letter Welch had written Kerr on May 3, 1948, proposing a design for a dipstick.

The trial court found that this change from a right angle wooden support for the inner plastic tubes to a rounded or radial wooden support for the same plastic tubes was "a minor change" between the dipstick as designed by Grindle (first placed on a drawing board on April 28, 1948), and as delivered by Welch, on August 12, 1948, and subsequently, that any skilled mechanic " * * * could have accomplished the substitution." With this conclusion we agree. It therefore becomes unnecessary for us to determine, as counsel for Welch urges, whether, granting invention to Kerr rather than Welch, the co-inventor statute saves the situation. 35 U.S.C.A. § 256. If there was no invention, the necessity of determining co-invention disappears.

The trial court likewise found the two additional variations (plastic and cement laminations, and protrusion of the tubes beyond the upper edge) were minor changes, and capable of being accomplished by any skilled mechanic, "or any person who has had some experience working with plastics." Again we agree. The record as a whole overwhelmingly demonstrates that in all essentials, the dipstick as finally submitted by Grindle to Welch, both through sketch, engineering design, and mock-up, was the dipstick incorporated in the patent. Not by the wildest flight of fancy could we hold the court's finding in this regard clearly erroneous. Fed.Rules of Civ.Proc. Rule 52(a).

If the patent in suit is invalid and void because it was not filed by the true inventor, we need go no further on the issue of invalidity. We have, however, examined the record, and we agree with the trial judge's findings that the Letters Patent are further invalid, both because they were filed on August 17, 1949, more than one year subsequent to public use on August 12, 1948, and because the patent does not teach invention over the prior art. The concept here is the insertion into a liquid of a hollow tube open at both ends, and the stopping by finger or valve of the upper end, and thus by hydrostatic pressure against the upper vacuum after removal, holding the same height of liquid in the tube as that which originally existed outside the tube, and measuring that height.[5] This procedure was known to the ancients. As the trial court said, "the operation of the device is the same as that used by children playing with straws" in some liquid. The transparent inner tube; the openings at either end thereof; the support surrounding the tubes; the graduated scale easily visible, are taught by both Hyde

---

5. We eliminate consideration of "column drop" which must be compensated for in an apparatus of this kind to obtain strictly accurate computations. See Plaintiff's Exhibit 38.

and Schmitt [6]—the differing scales on different tubes, is taught by Schmitt.

On March 14, 1863, Hyde anticipated the use of plastic with his statement:

"I do not limit my claim to the particular form of (gauging) rod here given. The (inner) tube may be protected and combined with the necessary scales and the rod manufactured in many different forms and styles. In fact, *my improved gaging rod may be made wholly of glass or other transparent material* with graduated scales marked directly thereon."

It is of interest to note that the file wrapper discloses no references were cited to either domestic or foreign patents when the Letters were issued.

We concur with the finding of the trial court that the patent in suit does not teach invention over the prior art. Manifestly, his finding to that effect is not clearly erroneous.

There exists conflicting evidence as to whether the Letters Patent were applied for more than a year subsequent to the public use. The key to the lower court's finding of prior publication was his conclusion (a) that Claims 2 and 3 were not substantial improvements over Claim 1, and (b) that Claim 1 was substantially equivalent to the Grindle drawing of June 10, 1948, which was Grindle's concept, and was "published" by drawing Number D–32.061.114. Appellant urges that the private circulation of this drawing cannot constitute "printed publications" in the statutory sense. 35 U.S.C. § 102(a) and (b). We need not pass on this question, because there is evidence of another condition prescribed by 35 U.S.C. § 102(b) which voids the Letters Patent if the invention was "in public use" more than one year prior to the application. The listing of the several conditions in Section 102(b) which void patents is in the disjunctive.[7]

There was evidence that the first delivery of the dipsticks was on August 12, 1948, and that prior to such delivery, one had been ordered placed on each Pan American plane in San Francisco for use immediately on delivery. This is not a device usable only in emergencies, such as an escape mechanism, for example. One cannot take a gasoline-engined plane off the ground without fuel, and the amount of fuel in any plane is measured by use of dipsticks. Every air-traveler has seen the use of dipsticks at airports. One must assume they would be required for use as soon as delivered, replacing the ordinarily used wooden dipsticks.

It was planned and ordered that these dipsticks as designed by Grindle were to be placed on each plane and used on August 1, 1948. Under date of June 14, 1948, written evidence discloses the use of such dipsticks were ordered. Under date of June 22, 1948, all station managers, chief mechanics and all flight engineers were advised in writing of the effective date of use of the new dipsticks. Plaintiff's Exhibit 14 and 15. There was delay in delivery from Welch. On August 12th, 1948, fifty-four of them were delivered to Pan American by Welch. Seven were rejected. The forty-seven not rejected on August 12th, 1948 were "immediately" taken by Grindle to the equipment shop and to the flight engineering office, and

"From that day every airplane that left San Francisco left with a dipstick on it, the new type dipstick on it." [Tr. p. 143.]

---

6. Schmitt; U. S. Letters Patent Number 1,423,156 of July 18, 1922. Hyde; U. S. Letters Patent Number 38,681 of May 26, 1863.

7. 35 U.S.C.A. § 102(a) and (b) read:
"A person shall be entitled to a patent unless—
"(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or
"(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, * * *"

We thus conclude there was ample evidence to support a finding of "public use" sufficient to void the Letters Patent, even if counsel for appellant is correct that the words "printed publication" in the statute under consideration mean *printed* publication, and not publication generally. As we have said, the prior use or publication is but one of three reasons why the lower court voided the patent, and even if there was error by reason of an incorrect or inadequate finding on this score, it would not be dispositive of this appeal.

### III. The Motion to Reopen

■■■ Appellant Welch next urges that error was committed by "the trial court's refusal to reopen the case for the introduction of further evidence bearing on the asserted defense of prior public use or sale of the invention forming the subject matter" of the Letters Patent.

The case was tried in late February 1956. On May 25, 1956, defendant-appellant Welch moved to reopen the case, and filed affidavits in support thereof.

These affidavits indicated that Welch had relied on the records of the Pan American World Airways System which showed delivery of the dipsticks to them by Welch on August 18, 1948; that Welch as a consequence of such reliance, on February 6, 1956, had authorized his counsel to implement the admissions of the answer on file by filing with the Patent Office a disclaimer of Claim 1 (one) of the Letters Patent in suit.

These affidavits further rely on the obvious use of non-consecutive numbers by Pan American World Airways on its receiving reports. Exhibit 17 dated August 12, 1948 acknowledging receipt of the dipsticks, bore Serial No. 49986, while Exhibit 16 dated August 12, 1948, recording the fact of rejection, bore Serial No. 49700. Receiving Report No. 51113, bearing the date of August 23, 1948 (Exhibit D to affidavit of Welch) acknowledges receipt of twenty-four additional dipsticks, while Receiving Report No. 50135 (Exhibit E to Affidavit) is dated August 26, 1948, and covers twenty-nine additional dipsticks delivered out of the one hundred originally ordered.

An affidavit of Francis J. Burke, shows that his company, the Independent Press Room, Inc., by Order No. 50759, dated July 29, 1948, proceeded to print the "gauge sheets" used in the dipsticks; that two zinc line engravings were received by him, and that on July 30th and August 2nd, 1948, four hundred and thirty impressions were run; that on August 3rd and 4th, 1948, the said sheets were cut and attempted to be pasted or glued on the wood on August 3rd, 4th, and "a fraction of an hour" on August 12th; 1.5 hours on August 13th; 3.9 hours on August 17th; "that [it] is your affiants recollection that all the 100 code (sic) sticks * * * were delivered" by him to "Welch at one and the same time * * *;" that "the earliest possible date on which a quantity, such as 54 of said coresticks, could have been satisfactorily finished and delivered to Mr. Welch would have been after the work that was done on Friday, August 13, 1948."

In reply, Grindle filed his own and one other affidavit on June 5th, 1956, explaining how the receiving, supply and accounting departments of Pan American operated in July 1948; "that the numerical sequence of the receiving report numbers had no correlation to the date in which shipments were actually received" because there were three registering machines and "separate blocks of numbers were assigned to each registering machine and because any one machine could be used in receiving a particular shipment."

The Pan American date stamps supported Grindle's chronology.

On June 7, 1956, the trial judge, after hearing oral arguments, and having the affidavits of both sides before him, denied the motion to reopen and the motion for an order revoking the disclaimer, previously filed in accordance with the provisions of 35 U.S.C. § 253.

At best, the evidence offered by Welch even if uncontradicted and if accepted at

face value, was merely cumulative. It added nothing new. Kansas City So. Ry. v. Cagle, 10 Cir., 1956, 229 F.2d 12, certiorari denied 351 U.S. 908, 76 S.Ct. 697, 100 L.Ed. 1443; United States v. Bransen, 9 Cir., 1944, 142 F.2d 232; 3 Barron & Holtzhoff, Federal Practice and Procedure, § 1305. Nor was any reason given or showing made why the evidence had not been earlier obtained. The trial judge has a large discretion in such matters. Cole v. Fairview Dev. Co., 9 Cir., 1955, 226 F.2d 175; United States v. Bransen, supra; 3 Barron & Holtzhoff, ibid; Fed.Rules Civ.Proc. 59(a)(2); cf. Lavino v. Jamison, 9 Cir., 1956, 230 F.2d 909. We find no error in the denial of either motion. And it could not be reversible error, because of the District Court's other findings on other issues which are equally decisive and controlling.

### IV. Additional Grounds Urged for Reversal

We find no merit in appellant's remaining contentions (a) that Grindle's claim was stale, barred by the California Statute of Limitations; (b) that the "release or license" *executed by Pan American* (Plaintiff's Exhibit 12) estopped Grindle, *individually*, from maintaining his cause of action; (c) that Grindle's claim was barred by his laches; (d) that Grindle's claim against Welch *as a patentee*, was barred by Grindle's acquiescence to Welch's *manufacturing* of the product; (e) that Welch's defense *required* the court to award him attorney's fees; and, (f) that the relief granted Grindle against Welch was improper.

We think we should say generally, however, that the testimony produced by plaintiff-appellee Grindle was substantiated by much written evidence, produced under the auspices of or by third parties, which materially aided his case and added authenticity to his recollection. On the other hand, appellant Welch's oral testimony was shaken by some glaring discrepancies or inherent contradictions. For example:

(1) Why would Welch ask for or obtain or want a letter similar to that of June 10, 1948, permitting him to "market" the dipstick, were he the inventor?

(2) Welch's drawing, dated May 12, 1948 (Defendant's Exhibit R 1), but which he admitted at the trial was not signed by him, (as inventor) on that date. (Tr. p. 553.) Welch could not fix the date he had signed it, even approximately. This testimony is to be contrasted with the testimony Welch gave under oath at the time his deposition was taken (Exhibit 34, p. 51, line 11):

" 'Mr. Hohbach. Q. Who was the draftsman for this drawing? A. Lou Klein, my next-door neighbor. I have already furnished you with the address.

" 'Q. When was the drawing made up? A. When we were making up the dipstick. At the time we made up the first sample.

" 'Q. I see it is dated May 12, 1948. Was the drawing made up on that date? A. Well, *I certainly would assume that it is the day I signed the drawing.'* [Emphasis added.]

" 'Q. That would mean that the drawing was made up prior to that, is that correct? A. *It would have to be made up prior to the day I signed it, prior to the moment I signed it.'* [Emphasis added.]"

(3) Welch placed, in his own printing, "Print #5," on the drawing incorrectly dated May 12, 1948. He explains this, in his own words:

"I can't tell you why I put it on. I was going to say an imaginary attempt at adding prestige, to the fact that maybe we made a whole bunch of drawings. But there was only one made at the time. There wasn't five made." [Tr. p. 554.]

(4) In the file of Welch's attorney, Mr. Vale, there was "a drawing covering the calibrations for the Boeing dipstick. * * * it is drawn by G. Boyle," said Mr. Welch, "and dated February the 4th, 1948, but that date has to be in error because my name is on this drawing. [I] didn't even know anything about a plas-

tic dipstick at that date. It must have been intended to be 1949. * * * [T]he first order for Pan American for the Boeing dipstick * * * we made and delivered * * * in February of '49." [Tr. p. 556.]

There may be valid explanations why both the Boeing dipstick's denominated calibration and the drawing, (Defendant's Exhibit R 1), contained false dates, each earlier than the dates upon which they were drawn, and why they or a copy thereof were in Mr. Vale's file—but one obvious reason for such manufactured evidence would be an attempt to convince the patent attorney that Welch could establish invention prior to the time Grindle first communicated with Welch on the subject. On that date Grindle had his original drawing (Plaintiff's Exhibit 6) on his desk before him. [Tr. p. 562.] Thereafter, says Welch through his attorney by letter dated October 27, 1954.

"Mr. Welch continued to work on the problem, and in May of 1948 completed the design of an entirely different liquid column type measuring gauge. All that Mr. Grindle did in connection with this gauge was to prepare a drawing from the sample furnished by Mr. Welch. This drawing is Number D-32.061-114."

A mere visual examination of Drawing Number D-32.061.114 with its table of calibrations, or "graduation chart," its dimensions, its specifications, its tolerances, tends to throw doubt on the ability of Welch (a salesman who had never seen a dipstick using the hydrostatic principle until Grindle told him of it and showed him Plaintiff's Exhibit 6) to have had the capacity prior to June 1948 to conceive the dipstick in question.

We regretfully conclude that the evidence was such that the trier of fact could readily have come to the conclusion that Welch attempted to build false evidence from which he could claim to be the inventor of the dipstick.

## V. Did a Justiciable Controversy Exist?

■ We are satisfied it did. Crowell v. Baker Oil Tools Inc., 9 Cir., 1944, 143 F.2d 1003.

The courts have repeatedly held that actual manufacture, use or sale is not essential and that it is sufficient that the party charged is about to infringe or take some action which is prejudicial to the interests of the patentee. Aralac, Inc. v. Hat Corp. of America, 3 Cir., 1948, 166 F.2d 286; Treemond Co. v. Schering Corporation, 3 Cir., 1941, 122 F.2d 702; E. W. Bliss Co. v. Cold Metal Products Co., D.C.Ohio, 137 F.Supp. 676; General Electric Co. v. Refrigeration Patents Corp., D.C.W.D.N.Y.1946, 65 F. Supp. 75.

Finding no error, the judgment is affirmed.