SUPER PRODUCTS CORPORATION, a
Wisconsin Corporation,
Plaintiff-Appellee,

v.

D P WAY CORPORATION, a Wisconsin
Corporation, Defendant-Appellant.

No. 76–1156.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 13, 1976.

Decided Dec. 14, 1976.

Rehearing and Rehearing En Banc
Denied Jan. 11, 1977.

**750**

Patrick H. Hume, Richard G. Lione, Chicago, Ill., for defendant-appellant.

Robert K. Steuer, John C. Cooper, III, Milwaukee, Wis., for plaintiff-appellee.

Before CASTLE, Senior Circuit Judge, CUMMINGS, Circuit Judge, and PELL, Circuit Judge.

CASTLE, Senior Circuit Judge.

Defendant D P Way Corporation appeals from a judgment of the District Court declaring United States Letters Patent No. 3,541,631 invalid and from an order awarding plaintiff Super Products Corporation the sum of $17,823.50, with interest, as attorneys' fees. We affirm the court's declaratory judgment, and we reverse its order awarding attorneys' fees.[1]

The defendant is a Wisconsin corporation that has been engaged since 1968 in the business of manufacturing and selling a heavy-duty mobile dust-free vacuum device called the "Ultravac." This vacuum "loader and cleaner" is a large machine primarily used in industry to remove debris, processing materials and waste. Patent No. 3,541,-631 relates to a machine for industrial vacuum cleaning that includes a self-cleaning filtration device. It was issued on November 24, 1970, to D P Way Corporation as the assignee of Burnett M. Kluge and Howard E. Paulson, the named coinventors. Plaintiff Super Products Corporation is a Wisconsin corporation that was organized in late 1972 for the purpose of manufacturing and selling industrial vacuum cleaning equipment. The principal organizer was Lionel G. Moore, Jr., then a vice-president and sales manager of D P Way Corporation, who had been a director and shareholder of the defendant and who later became president of Super Products Corporation. In the early months of 1973, plaintiff began to design an industrial vacuum cleaner, similar to the "Ultravac," that it planned to manufacture and sell.

---

1. Defendant also appeals from a permanent injunction by the District Court, restraining defendant from asserting rights under the patent, and from an order awarding plaintiff costs incurred in an effort to enforce the court's award of attorneys' fees. The merits of these actions were not addressed by the parties on appeal except as they were based on the court's declaratory judgment and its award of attorneys' fees. In accordance with our holding on the underlying issues, we affirm the court's issuance of the injunction and reverse its order awarding plaintiff the stated costs.

Plaintiff filed a complaint against D P Way Corporation[2] on April 12, 1973, challenging the validity of Patent No. 3,541,631.[3] After some discovery by oral deposition and interrogatories and after filing a copy of the file wrapper (the prosecution papers submitted to the Patent Office) for Patent No. 3,541,631 with the District Court, plaintiff moved on June 27, 1973, for a summary judgment declaring the patent invalid. It also asked for a finding by the court that this was an "exceptional case," entitling the plaintiff to reasonable attorneys' fees under 35 U.S.C. § 285. Plaintiff asserted that Patent No. 3,541,631 was issued for the self-cleaning filtration device described in the patent claim. Paulson, who was president of the defendant, had admitted in his June 18, 1973, deposition that this device, called the Mikro-Pulsaire Dust Collector, had been patented[4] and was available for purchase on the market prior to the date that Patent No. 3,541,631 was issued. Paulson stated that the inventors had merely inserted the Mikro-Pulsaire Dust Collector, which they had purchased from the Pulverizing Machinery Division of Slick Industrial Company, into their machine as part of the filtration system. Plaintiff, relying on these admissions, asserted that the patent was invalid because the invention for which it was issued was old in the art and that the case was "exceptional" because the applicants had failed to disclose relevant prior art of which they had knowledge to the Patent Office. D P Way Corporation resisted plaintiff's motion for summary judgment on three grounds. First, it disputed the plaintiff's assertion that the patent was issued for the self-

cleaning filtration device described in the claim, arguing that the patent was issued for a combination of elements, including the Mikro-Pulsaire Dust Collector, which together comprised its industrial vacuum cleaner. Second, it argued that the case was not appropriate for summary judgment because construction of the patent claim required expert testimony. And third, it argued that the District Court lacked jurisdiction to enter a declaratory judgment because there was no actual controversy between the parties. It asserted that the plaintiff's apprehension that it might be sued for infringement was merely conjectural at the time the complaint was filed.

The District Court, Judge Reynolds presiding,[5] held a hearing on plaintiff's motion on November 16, 1973, after which the court asked plaintiff to submit proposed findings of fact and conclusions of law. The court adopted the plaintiff's proposed findings and conclusions on June 28, 1974. Judge Reynolds rejected the defendant's jurisdictional and procedural arguments, found that the invention claimed under Patent No. 3,541,631 was the self-cleaning filtration device, and found that the applicants had breached the standards of honesty and candor required of patent applicants by failing to disclose relevant prior art of which they had knowledge. The court held that Patent No. 3,541,631 was invalid because it failed to meet the tests of being new and useful, novel and not obvious under 35 U.S.C. §§ 101–03. However, the court did not rule at that time on the question of whether the case was "exceptional" within the meaning of 35 U.S.C. § 285.

2. Plaintiff also named as defendants Howard E. Paulson, Duncan Johnstone, and James R. Wartinbee, Sr., who were officers, directors and shareholders of D P Way Corporation. These persons were dismissed as defendants on December 31, 1975.

3. The original complaint contained two counts, the first alleging violation of the antitrust laws by the defendants and the second challenging the validity of Patent No. 3,541,631. The District Court dismissed the first count without prejudice, after a motion by the plaintiff, on November 28, 1975.

4. The Mikro-Pulsaire Dust Collector was made under United States Patent No. RE24,954, known as the Church Reissue Patent, which was held invalid in *Aerodyne Machinery Corp. v. Slick Industrial Co.,* 169 U.S.P.Q. 150 (D.Minn.1971).

5. The Honorable John W. Reynolds, Chief Judge of the United States District Court for the Eastern District of Wisconsin.

Plaintiff moved for judgment in accordance with the findings of fact and conclusions of law on September 19, 1974, seeking in addition a determination by the District Court that the case was "exceptional" and an award of $17,465.25 as reasonable attorneys' fees in accordance with that determination. In opposition to plaintiff's motion for an award of attorneys' fees, defendant asserted that the inventors were innocent of any willful lack of candor in dealing with the Patent Office. It also asserted that Moore was an active participant in the effort to obtain Patent No. 3,541,631, that he was involved in any breach of standards that occurred in prosecution of the patent claim, and that Super Products Corporation could not properly claim monetary benefits from an act in which its president had been an active participant. Judge Warren,[6] to whom the case had been reassigned, entered judgment on September 24, 1975, in accordance with the findings and conclusions and determined that the plaintiff was entitled to attorneys' fees. After conducting evidentiary hearings on the amount to which plaintiff was entitled as reasonable attorneys' fees, the court ordered an award of $17,823.50 on November 28, 1975. This appeal followed.

## I.

D P Way Corporation asserts that the District Court lacked jurisdiction to entertain the plaintiff's declaratory judgment action because no actual controversy regarding the validity of the defendant's patent existed between the parties at the time the complaint was filed. In its answer to the complaint, the defendant denied plaintiff's allegations relating to the existence of a justiciable controversy and thereby put the plaintiff to the burden of proving that such a controversy existed between the parties.[7] *McNutt v. General Motors Accept-*ance *Corp.,* 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Seagram-Distillers Corp. v. New Cut Rate Liquors,* 245 F.2d 453 (7th Cir.), cert. denied, 355 U.S. 837, 78 S.Ct. 61, 2 L.Ed.2d 48 (1957); *Pure Oil Co. v. Puritan Oil Co.,* 127 F.2d 6 (2d Cir. 1942). Super Products Corporation moved for summary judgment after certain depositions and answers to interrogatories were filed with the District Court, and the defendant raised the jurisdictional question in opposition to the motion. As the defendant argues, the requisite controversy must have existed at the time the complaint was filed. *American Needle & Novelty Co. v. Schuessler Knitting Mills, Inc.,* 379 F.2d 376 (7th Cir. 1967). *But see Technical Tape Corp. v. Minnesota Mining & Manufacturing Co.,* 200 F.2d 876, 879 (2d Cir. 1952) (Clark, J., concurring). The uncontroverted facts contained in the depositions and the answers to interrogatories establish that the following conditions existed at that time. Super Products Corporation had been organized in late 1972 principally for the purpose of building industrial vacuum cleaning equipment. By the time the complaint was filed, it had developed a general design for an industrial vacuum cleaner with plans for nine models. It was offering a description of the machine and its various models to prospective customers and was actively soliciting orders for them. The plaintiff was in the process of building parts for the machine. With the exception of the fact that the plaintiff's proposed machine was designed to be drawn by a truck instead of to be self-propelled, it was in all essential respects the same as the machine described in the defendant's patent claim. The defendant's officers had stated to certain prospective investors and customers of Super Products Corporation that D P Way Corporation would institute patent infringement suits if any competitors infringed its patent rights, sometimes mentioning Super Products Corporation by name. We

---

6. The Honorable Robert W. Warren, District Judge.

7. In response to defendant's suggestion that the court lacked jurisdiction, Fed.R.Civ.P. 12(h), we have examined the complaint to determine whether the court's jurisdiction was properly invoked in the first instance. *See Gully v. First National Bank,* 299 U.S. 109, 113, 57 S.Ct. 96, 81 L.Ed. 70 (1936); *Stewart v. United States,* 199 F.2d 517 (7th Cir. 1952). We have concluded that it was, under the principles set forth below.

believe that under these conditions the plaintiff was entitled to maintain its declaratory judgment action.

■ The statutory requirement that an "actual controversy" exist in an action for federal declaratory relief, 28 U.S.C. § 2201, is no more than a recognition that the federal judicial power is limited to the determination of "cases" or "controversies" in the constitutional sense. *Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 239–40, 57 S.Ct. 461, 81 L.Ed. 617 (1937); *Winsor v. Daumit*, 185 F.2d 41, 43 (7th Cir. 1950); *Sherwood Medical Industries, Inc. v. Deknatel, Inc.*, 512 F.2d 724 (8th Cir. 1975). The case or controversy requirement limits the exercise of federal judicial power to suits that present "real and substantial" controversies involving "the legal relations of parties having adverse legal interests" and prohibits its exercise in suits that rest upon "a hypothetical state of facts." *Aetna Life Insurance Co. v. Haworth, supra*, 300 U.S. at 240–41, 57 S.Ct. 461, 464. The Supreme Court has recognized that the difference between a hypothetical question and an actual controversy is "necessarily one of degree" and that the basic question is whether the facts alleged show a controversy of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941).

■ D P Way Corporation argues that Super Products Corporation was merely considering the advisability of commencing production of its industrial vacuum cleaner at the time the complaint was filed, *see* 6A J. Moore, Federal Practice ¶ 57.20 at 57–210 (1974), and that plaintiff did not have a stake in the outcome of the controversy. *See Flast v. Cohen*, 392 U.S. 83, 101, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). We disagree. Not only do the facts disclose an apparent ability and a definite intention on the part of plaintiff to manufacture and sell a product similar to the one described in defendant's patent, *see Sweetheart Plastics, Inc. v. Illinois Tool Works, Inc.*, 439 F.2d 871 (1st Cir. 1971); *Wembley, Inc. v. Superba Cravats, Inc.*, 315 F.2d 87 (2d Cir. 1963); *Crowell v. Baker Oil Tools*, 143 F.2d 1003 (9th Cir. 1944), but they establish the existence of a business enterprise specifically directed to the manufacture and sale of a potentially infringing product, *see Welch v. Grindle*, 251 F.2d 671 (9th Cir. 1957). We believe the plaintiff had a protectible interest[8] in that line of business.

■ Defendant, however, contends that no actual controversy existed because it had not charged the plaintiff with infringement or otherwise indicated a decision to sue plaintiff for infringement if it continued in its determined course. To establish an actual controversy in an action challenging the validity of a patent, the plaintiff must disclose conduct on the part of the defendant that makes reasonable the plaintiff's apprehension that it will face an infringement suit or the threat of one if it commences or continues the activity in question. *Sticker Industrial Supply Corp. v. Blaw-Knox Co.*, 367 F.2d 744 (7th Cir. 1966); *Sherwood Medical Industries, Inc. v. Deknatel, Inc., supra*. Such conduct need not be an accusation. In *Sticker*, we found sufficient conduct by the defendant in notices sent to the plaintiff's customers informing them that licenses were available for a patented process for which the plaintiff's product was specifically designed. The notices implied that plaintiff would be guilty of contributory infringement if its customers continued the unlicensed use of the patented process and therefore gave the plaintiff reason to fear that it would be subject to infringement litigation. In the instant case, the defendant's officers stated to prospective investors and customers of

---

8. The plaintiff's stake must be an interest in avoiding infringement litigation or the threat of such litigation to satisfy the separate jurisdictional requirement that the case arise under the patent law. *Thiokol Chemical Corp. v. Burlington Industries, Inc.*, 448 F.2d 1328 (3d Cir. 1971), *cert. denied*, 404 U.S. 1019, 92 S.Ct. 684, 30 L.Ed.2d 668 (1972); *Aralac, Inc. v. Hat Corporation of America*, 166 F.2d 286 (3d Cir. 1948). There is no question in this case that plaintiff seeks to avoid infringement litigation by the defendant.

Super Products Corporation that D P Way Corporation would bring infringement litigation if any competitors, including the plaintiff, were to infringe its patent rights. Defendant argues that these statements do not support a reasonable apprehension on the part of plaintiff, because defendant's officers had not yet had a chance to determine whether plaintiff's proposed machine infringed its patent. In *American Needle & Novelty Co. v. Schuessler Knitting Mills, supra,* we held that a mere request by the defendant for a sample of plaintiff's product to determine whether or not the product infringed its patent was insufficient to justify the plaintiff's apprehension of infringement litigation. In that case, the plaintiff had declared its belief that the product did not infringe the defendant's patent, and there was no certainty that the defendant would conclude that its rights were infringed. Similarly, the statements of defendant's officers, if taken out of context, leave open the possibility that D P Way Corporation might conclude that plaintiff's manufacture of its machine did not infringe its patent. However, we believe the defendant's conduct must be viewed in light of the facts available to the plaintiff at the time the complaint was filed. The June 4, 1973, deposition of Moore reveals that plaintiff's proposed machine, with one minor exception, contained all the elements of the machine described in the defendant's patent claim. In light of the virtual identity between the patented machine and plaintiff's proposed product, we believe the plaintiff had reason to fear infringement litigation by the defendant by reason of its stated determination to defend its patent rights. In *Federal Telephone & Radio Corp. v. Associated Telephone & Telegraph Co.,* 169 F.2d 1012 (3d Cir.), *cert. denied,* 335 U.S. 859, 69 S.Ct. 133, 93 L.Ed. 406 (1948), the Third Circuit found a sufficient threat of infringement litigation in an advertisement by the defendant stating that "we must . . . take every possible step to protect our own patent position" and that "no use will hereafter be made of any of our patents" except by licensed persons. *Id.* at 1014 n. 3. The plaintiff had alleged that seven of the defendant's patents found literal response in the plaintiff's apparatus, and the court held that the plaintiff's complaint disclosed an actual controversy with respect to the validity of those patents. As in the instant case, although the defendant had not accused the plaintiff of infringement, the plaintiff could reasonably expect infringement litigation because of the similarity of its own product to the defendant's patented product and because of the defendant's expressed determination to defend its rights.

█ Finally, we find no merit in the defendant's argument that actual infringement by the plaintiff was necessary to an actual controversy between the parties. The Ninth Circuit rejected this argument in *Welch v. Grindle, supra.* In *Welch,* the plaintiff had alleged that he had organized a corporation with adequate financial resources to produce dipsticks incorporating the subject matter of the defendant's patent and with cost studies, tools, jigs, quotations on components and production models of the dipstick. The court of appeals held that a justiciable controversy existed, stating that "actual manufacture, use or sale is not essential" and that "it is sufficient that the party charged is about to infringe or take some action which is prejudicial to the interests of the patentee." *Id.* at 678. The Second Circuit has said that requiring a plaintiff who has established an ability and a definite intention to manufacture an infringing product actually to undertake manufacture before being entitled to discover whether such action was illegal would create unnecessary delay and economic waste. *Wembley, Inc. v. Superba Cravats, Inc., supra* at 90. *See also Crowell v. Baker Oil Tools, supra.* While infringement signals the interference by a prospective competitor with the patentee's rights, the existence of those rights may place the prospective competitor's legal interests in jeopardy before that time. Under the conditions that existed at the time the complaint was filed, Super Products Corporation was faced with a choice of either incurring potential liability for infringement of the defendant's patent or abandoning an existing business

enterprise. We do not believe the plaintiff's filing of its complaint was premature. "One does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough." *Regional Rail Reorganization Act Cases,* 419 U.S. 102, 143, 95 S.Ct. 335, 358, 42 L.Ed.2d 320 (1974), quoting *Pennsylvania v. West Virginia,* 262 U.S. 553, 593, 43 S.Ct. 658, 67 L.Ed. 1117 (1923).

## II.

Super Products Corporation rested its challenge to the validity of Patent No. 3,541,631 on the language of the patent itself, the file wrapper and the admission by Paulson that the self-cleaning filtration device described in the patent was the Mikro-Pulsaire Dust Collector. Paulson and Kluge filed on August 5, 1968, a patent application containing 10 claims, each of which set forth a combination of elements making up an industrial vacuum loader and cleaner. The tenth claim was for a "mobile, self-propelled vacuum-type industrial cleaner" that included the elements that Paulson identified as the purchased filtration device. The patent examiner rejected all 10 claims in the original application as unpatentable,

citing as prior art a suction collecting refuse vehicle, a carpet cleaning device, a power sweeper, a dust collection device and a sound attenuator for a vacuum-type debris collector. The examiner stated, "Applicants have merely selected the desirable features from prior art structures and united them in a single article possessing no new or unobvious result because of said assemblage." The applicants subsequently cancelled the original claims and filed a substitute claim that in essence stated: [9]

What we claim is:

11. In a mobile, self-propelled vacuum-type cleaner including [a series of elements set forth as clauses in a sentence], the improved filter means adapted to filter fine dirt particles from the airstream before said airstream is drawn into said blower, comprising

[a series of elements set forth in separate paragraphs].

In remarks submitted with the new claim, the applicants' attorney stated, "[N]ew Claim 11 submitted herewith has been carefully drafted to more clearly distinguish applicants' structure from the devices disclosed in the reference patents." The attorney then compared the applicants' device to the prior structures, particularly emphasiz-

**9.** The claim in its entirety stated:

What we claim is:

11. In a mobile, self-propelled vacuum-type cleaner including a cab, a body pivotally mounted rearwardly of said cab, a power-operated suction-type blower, a hopper in the rearward portion of said body, an elongated flexible intake hose communicating with said hopper interior, means in said hopper for causing the heavier dirt particles and refuse drawn therein through said intake hose to be separated from the air stream and deposited on the bottom of the hopper, a chamber between said hopper and said blower, an airstream passageway communicating with and extending between the upper portion of said chamber and said blower, and an exhaust stack communicating with said blower, the improved filter means adapted to filter fine dirt particles from the airstream before said airstream is drawn into said blower, comprising:

a plurality of spaced, aligned rows of tubular fabric filter bags removably suspended from the upper portion of said chamber and positioned to intercept the

fine dirt-entraining airstream drawn from said hopper toward said blower, said filter bags being closed whereby said airstream is caused to flow through said bag walls to the interior of said bags and upwardly through the open tops of said bags into the airstream passageway communicating with said blower, the fine dirt particles in said airstream being filtered out by said fabric bags and collected on the exterior surfaces thereof;

manifold pipe means mounted above the open tops of said filter bags; and

means for directing blasts of air under pressure from said manifold pipes downwardly into and through said filter bags to knock the dirt accumulated on the outer surfaces thereof onto the chamber floor therebelow, said air blasts being directed sequentially through one row of filter bags at a time, proceeding progressively down the line of bags in sequence and then automatically starting again with the first row, so that said bag-cleaning action is continuous and does not require the stopping of said filter operation.

**756**

ing the novelty of the filtration device as a distinguishing feature and concluding that "none of said prior patents discloses anything comparable to the unique combination comprising the present invention." The Patent Office issued Patent No. 3,541,631 on the basis of this claim.

 The District Court granted summary judgment declaring Patent No. 3,541,631 invalid essentially on the basis of two findings: first, that the patent was issued for the "filter means"; and second, that the filtration device patented was the Mikro-Pulsaire Dust Collector, which was old art. It is well settled that the validity of a patent may be determined on motion for summary judgment if no genuine issue of material fact is present. *Research Corp. v. Nasco Industries, Inc.,* 501 F.2d 358 (7th Cir.), *cert. denied,* 419 U.S. 1096, 95 S.Ct. 689, 42 L.Ed.2d 688 (1974). Defendant concedes that the filtration device described in the patent claim was the Mikro-Pulsaire Dust Collector and that this device was old art. It only disputes the finding that Patent No. 3,541,631 was issued for the filtration device, claiming that it was issued for the vacuum cleaner as a whole.

 Defendant asserts that summary judgment was improper, arguing that it should have been permitted to introduce expert testimony to show that the combination of elements making up its vacuum cleaner achieved a patentable result. This proposed testimony is an invitation to the court to consider which set of elements—the vacuum cleaner or the filtration device—should have been patented, and it has no proper bearing on the question of which set was patented. The identity of a patented invention, as well as its scope, is determined by the claim or claims submitted by the applicant and allowed by the Patent Office. *McClain v. Ortmayer,* 141 U.S. 419, 423–24, 12 S.Ct. 76, 35 L.Ed. 800 (1891); *Ohio Citizens Trust Co. v. Lear Jet Corp.,* 403 F.2d 956 (10th Cir. 1968), *cert. denied,* 394 U.S. 960, 89 S.Ct. 1308, 22 L.Ed.2d 561 (1969); *General Motors Corp. v. Rubsam Corp.,* 65 F.2d 217, 221 (6th Cir. 1933), *cert. denied,* 290 U.S. 688, 54 S.Ct. 123, 78 L.Ed.

593 (1933). Construction of a patent claim is a question of law for the court if extrinsic evidence is not needed to resolve a dispute about terms of art in the claim. *Singer Manufacturing Co. v. Cramer,* 192 U.S. 265, 24 S.Ct. 291, 48 L.Ed. 437 (1904). The dispute in this case is not about a term of art but instead is about the very subject matter of the defendant's claim. The patent law imposes an obligation on an applicant to point out and distinctly claim the subject matter that he regards as his invention in the claim he submits to the Patent Office. 35 U.S.C. § 112. If the claim does not fairly reflect the invention he seeks to protect, the courts are without power to rewrite the claim even though his invention might have justified patent protection, and we cannot do indirectly, that is by construction, what we cannot do directly. *Colgate-Palmolive-Peet Co. v. Lever Bros. Co.,* 90 F.2d 178, 194 (7th Cir.), *cert. denied,* 302 U.S. 729, 58 S.Ct. 54, 82 L.Ed. 563 (1937). The District Court was correct in rejecting defendant's proposed testimony and in proceeding to summary judgment.

 Defendant asserts that, in light of the prosecution history before the Patent Office and the remarks of applicants' counsel, it is apparent that Claim 11 was merely a refinement of the previous efforts to patent a vacuum cleaner. It argues that the District Court erred in finding that Patent No. 3,541,631 was issued for the filtration device alone. We disagree. We have said that the "guiding star" in construction of a patent is the phraseology the applicant employed in his claim. *Texas Co. v. Globe Oil & Refining Co.,* 225 F.2d 725, 729 (7th Cir. 1955). While the language of the claim must be read in light of the specification and the file wrapper, *Graham v. John Deere Co.,* 383 U.S. 1, 33, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); *Ortho Pharmaceutical Corp. v. American Hospital Supply Corp.,* 534 F.2d 89, 94 (7th Cir. 1976), the claim alone is the measure of the invention, *Aro Manufacturing Co. v. Convertible Top Replacement Co.,* 365 U.S. 336, 339, 81 S.Ct. 599, 5 L.Ed.2d 592 (1965); *Laser Alignment, Inc. v. Woodruff & Sons, Inc.,* 491 F.2d 866, 872 (7th Cir.), *cert. denied,* 419 U.S. 874, 95 S.Ct. 135,

42 L.Ed.2d 113 (1974). The monopoly granted to the inventor can never be broader than the invention disclosed to the public, and, while the specification and the file wrapper may limit a claim or serve to resolve an ambiguity in it, they may not be used to enlarge the claim. *See Bendix Corp. v. Balax, Inc.,* 421 F.2d 809, 813 (7th Cir.), *cert. denied,* 399 U.S. 911, 90 S.Ct. 2203, 26 L.Ed.2d 562 (1970); *Del Francia v. Stanthony Corp.,* 278 F.2d 745, 747 (9th Cir. 1960). Where the meaning of the text of a patent is clear, it must be taken at its face value. *Application of Inman,* 228 F.2d 229, 231, 43 CCPA 709 (1955). With the modifying phrases removed from the sentence predicate, Claim 11 stands in stark contradiction to the position the defendant now takes: "What we claim is the improved filter means." The applicants did not claim the vacuum cleaner as a whole but only referred to it in a prepositional phrase describing the environment in which their invention purported to create an improvement over the prior art. *See Williams Manufacturing Co. v. United Shoe Machinery Corp.,* 316 U.S. 364, 369, 62 S.Ct. 1179, 86 L.Ed. 1537 (1942). The applicants clearly distinguished the environment, including its elements, from the object of their claim. *Compare Stukenborg v. Teledyne, Inc.,* 441 F.2d 1069 (9th Cir.), *cert. denied,* 404 U.S. 852, 92 S.Ct. 90, 30 L.Ed.2d 92 (1971), *aff'g* 299 F.Supp. 1152 (C.D.Cal.1969). There is nothing in their description of the filtration device to suggest that its inventiveness lay in a novel relationship to or interaction with the environment. *Compare Wells Manufacturing Corp. v. Littlefuse, Inc.,* 547 F.2d 346 (7th Cir. 1976). The claim is unambiguous in specifying the filtration device alone as the applicants' invention. The District Court was correct in its construction of Patent No. 3,541,631 and, based on the defendant's admission that the filtration device was old art, it was correct in its holding that the patent was invalid under 35 U.S.C. §§ 101–03.

### III,

The District Court held that plaintiff was entitled to an award of attorneys' fees on the basis of the facts appearing on motion for summary judgment. The pertinent facts are simply stated. The applicants had tried to patent an industrial vacuum cleaner without success before submitting their successful claim. They submitted Claim 11, which recited in detail the elements of an industrial vacuum cleaner but expressly claimed only a filtration device for use in the cleaner, without citing the Mikro-Pulsaire Dust Collector as prior art. Their patent attorney, in remarks in support of the claim, stated that Claim 11 had been carefully drafted to distinguish "applicants' structure" from devices that included a mobile refuse collector, a power sweeper, and a dust collection device. He repeatedly emphasized the novelty of the filtration device as a distinguishing factor. Paulson, in his June 18, 1973, deposition, admitted that the filtration device described in Claim 11 was the Mikro-Pulsaire Dust Collector but denied that the applicants had ever contended that they invented the device. Defendant asserted to the District Court that the filtration device was one of a combination of old elements making up its patented vacuum cleaner and that citation of the device was therefore unnecessary.

In his June 28, 1974, findings of fact and conclusions of law, Judge Reynolds held that the applicants, by failing to cite the Mikro-Pulsaire Dust Collector, had breached the "standards of honesty and candor in presenting such facts to the Patent Office [required] to make the patent system work." When plaintiff thereafter moved for a determination that the case was "exceptional" within the meaning of 35 U.S.C. § 285, defendant asserted that the applicants' failure to cite the Mikro-Pulsaire Dust Collector had not been willful. Paulson, in an affidavit submitted in opposition to plaintiff's motion, stated that he had authorized the filing of the patent application under the belief that the combination of elements making up the inventors' vacuum cleaner was patentable. He stated that prosecution of the patent application thereafter was left in the hands of the

patent attorney and that the amendment, containing Claim 11 and the attorney's comments, was not submitted to him before it was filed. Judge Warren found in Judge Reynolds' earlier holding an implicit determination that the application was characterized by deceptive intent, and he held that the plaintiff was entitled to attorneys' fees because the applicants' conduct had impaired the integrity of the Patent Office. While the facts available on summary judgment do permit an inference of bad faith in the applicants' dealings with the Patent Office, we do not believe the plaintiff has met its burden of proof to sustain an award under 35 U.S.C. § 285.

When a claim for attorneys' fees under section 285 has been based on a charge of fraud on the Patent Office, we have required clear and definite proof to establish entitlement to an award. *Sarkes Tarzian, Inc. v. Philco Corp.*, 351 F.2d 557, 560 (7th Cir. 1965); *Armour & Co. v. Wilson & Co.*, 274 F.2d 143, 148 (7th Cir. 1960). While fraud is not the only inequitable conduct in dealing with the Patent Office that may support an award of attorneys' fees, *see Kearney & Trecker Corp. v. Giddings & Lewis, Inc.*, 452 F.2d 579, 597 (7th Cir. 1972), the misconduct must be accompanied by some element of willfulness or bad faith. *See Airtex Corp. v. Shelley Radiant Ceiling Co.*, 536 F.2d 145, 155 (7th Cir. 1976); *Everest & Jennings, Inc. v. Colson Corp.*, 371 F.2d 240, 243 (7th Cir.), *cert. denied*, 387 U.S. 918, 87 S.Ct. 2032, 18 L.Ed.2d 971 (1967). *Cf. Parker v. Motorola, Inc.*, 524 F.2d 518, 535 (5th Cir. 1975). The standard is not one of liability for innocent or even negligent omissions, or misstatements before the Patent Office. *Cf. Pfizer, Inc. v. International Rectifier Corp.*, 538 F.2d 180, 186 (8th Cir. 1976). The element of willfulness or bad faith must be established by clear and convincing evidence. The facts appearing on motion for summary judgment leave open the possibility that Claim 11 was a badly drafted attempt to patent the applicants' vacuum cleaner, that the patent attorney's comments in support of the claim were meant to emphasize the novelty of placing the Mikro-Pulsaire Dust

Collector in an industrial vacuum cleaner, and that the applicants omitted citation of the Mikro-Pulsaire Dust Collector in a good faith belief that it was not necessary. In short, the evidence is insufficient to establish whether the applicants' omission and misstatements were willful, negligent or innocent conduct.

Plaintiff argues that the facts disclose at least an "exceptional lack of diligence" sufficient to support an award of attorneys' fees under *L. F. Strassheim Co. v. Gold Medal Folding Furniture Co.*, 477 F.2d 818 (7th Cir. 1973). In *Strassheim*, we permitted an award of attorneys' fees on the basis of the patentee's exceptional lack of diligence both in prosecuting its patent application and in responding to relevant pretrial discovery. We expressly noted that the right to attorneys' fees did not mature until the patentee had failed to produce critical documents during the course of discovery. *Id.* at 824. The award was therefore based in essential part upon misconduct during the course of the litigation itself. *Accord, Skil Corp. v. Lucerne Products, Inc.*, 503 F.2d 745 (7th Cir. 1974), *cert. denied*, 420 U.S. 974, 95 S.Ct. 1398, 43 L.Ed.2d 654 (1975). In the instant case, Paulson by his admissions reduced the dispute about the validity of Patent No. 3,541,631 to a simple issue regarding the meaning of its terms. There is nothing to indicate that the defendant acted other than in good faith in defending its asserted construction of the patent.

We therefore find the facts appearing on plaintiff's motion for summary judgment insufficient to support a charge of willful misconduct or bad faith, either against the applicants in prosecuting their claim before the Patent Office or against the defendant in defending the patent issued, and we reverse the District Court's order awarding attorneys' fees. Because of this holding, we need not address the question of whether the plaintiff was disabled from obtaining an award of attorneys' fees because of Moore's alleged participation in the application for Patent No. 3,541,631 as an officer of D P Way Corporation.

AFFIRMED IN PART; REVERSED IN PART.